**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 25-40684-MXM-11** |
| **WATCHTOWER FIREARMS, LLC,**[1] | § | |
| | § | **CHAPTER 11 CASE** |
| Debtor. | § | |
| | § | |
| | § | |

**REVISED FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**
**OF WATCHTOWER FIREARMS, LLC**

Dated: January 14, 2026                    Respectfully submitted,

H. Joseph Acosta (TX SBN 24006731)
jacosta@condontobin.com
Jeff Carruth (TX SBN 24001846)
jcarruth@condontobin.com
Aimee E. Marcotte (TX SBN 24097101)
amarcotte@condontobin.com
**CONDON TOBIN**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Tel: 214-265-3852
Fax: 214-265-6311

**ATTORNEYS FOR DEBTOR AND**
**DEBTOR IN POSSESSION**

---

[1] The Debtor's federal identification number is: 88-1830032.

## Table of Contents

**ARTICLE I.    DEFINITIONS AND INTERPRETATION.**.................................................................1

    1.1    Definitions.................................................................................................................1
    1.2    Interpretation; Application of Definitions; Rules of Construction.............................12
    1.3    Reference to Monetary Figures..................................................................................12
    1.4    Controlling Document. ..............................................................................................12

**ARTICLE II.    ADMINISTRATIVE  EXPENSE  CLAIMS,  DIP  CLAIMS,  PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS.** ...................................................13

    2.1    Administrative Expense Claims..................................................................................13
    2.2    Satisfied Secured Claims. ..........................................................................................13
    2.3    Professional Fee Claims.............................................................................................14
    2.4    Priority Tax Claims. ...................................................................................................15

**ARTICLE III.  CLASSIFICATION OF CLAIMS AND INTERESTS.** ...............................15

    3.1    Classification in General.............................................................................................15
    3.2    Summary of Classification of Claims and Interests. ..................................................15
    3.3    Special Provision Governing Unimpaired Claims. .....................................................16
    3.4    Elimination of Vacant Classes. ..................................................................................16
    3.5    Voting Classes; Presumed Acceptance by Non-Voting Classes.................................16
    3.6    Voting; Presumptions; Solicitation. ...........................................................................16
    3.7    Cramdown...................................................................................................................16
    3.8    No Waiver...................................................................................................................17

**ARTICLE IV.   TREATMENT OF CLAIMS AND INTERESTS.**......................................17

    4.1    Class 1:  Other Secured Claims. ................................................................................17
    4.2    Class 2: General Unsecured Claims............................................................................17
    4.3    Class 3:  Liquidated Unsecured Claims of Interestholders.........................................17
    4.4    Class 4:  Subordinated Securities Claims. ..................................................................18
    4.5    Class 5:  Interests of Interestholders. .........................................................................18

**ARTICLE V.    MEANS FOR IMPLEMENTATION.** ..........................................................18

    5.1    Compromise and Settlement of Claims, Interests, and Controversies. .......................18
    5.2    Sources of Consideration for Plan Distribution; Vesting of Assets.............................19
    5.3    Implementation of the Plan.........................................................................................19
    5.4    Preservation of Causes of Action. ..............................................................................19
    5.5    Books and Records. ....................................................................................................20
    5.6    Effectuating Documents and Further Transactions. ....................................................20
    5.7    Sale Order...................................................................................................................20
    5.8    No Revesting of Liquidation Trust Assets...................................................................20
    5.9    Section 1146 Exemption from Certain Taxes and Fees...............................................21
    5.10    Corporate Action........................................................................................................21
    5.11    Governance. ...............................................................................................................21
    5.12    Cancellation of Existing Securities, Agreements, and Liens. ......................................22

5.13    Disallowance of the Subordinated Securities Claims. ...............................................22
5.14    Effectuating Documents; Further Transactions. ........................................................22
5.15    Closing of the Chapter 11 Case. ...............................................................................22

**ARTICLE VI.  LIQUIDATION TRUST** .................................................................................**23**

6.1    Establishment of the Liquidation Trust. ....................................................................23
6.2    Funding of and Transfer of Assets into the Liquidation Trust ...................................24
6.3    Liquidation Trustee. ...................................................................................................26
6.4    Liquidation Trust Agreement. ....................................................................................27
6.5    Fees and Expenses of the Liquidation Trust. .............................................................27
6.6    Dissolution of the Liquidation Trust. .........................................................................28
6.7    Records. .......................................................................................................................28
6.8    Transferability of Liquidation Trust Interests. ..........................................................28
6.9    Liquidation Trust Tax and Other Matters. .................................................................28

**ARTICLE VII.DISTRIBUTIONS.** .............................................................................................**31**

7.1    Distributions Generally. ..............................................................................................31
7.2    No Postpetition Interest on Claims. ............................................................................31
7.3    Distribution Record Date. ...........................................................................................32
7.4    Date of Distributions. ..................................................................................................32
7.5    Reserve on Account of Disputed Claims. ..................................................................32
7.6    Distributions After Effective Date. .............................................................................33
7.7    Plan Distributions Made by Liquidation Trustee. ......................................................33
7.8    Delivery of Distributions. ...........................................................................................34
7.9    Unclaimed Property. ...................................................................................................34
7.10    Satisfaction of Claims. ................................................................................................34
7.11    Manner of Payment Under Plan. ...............................................................................35
7.12    Minimum Distribution. ...............................................................................................35
7.13    No Distribution in Excess of Amount of Allowed Claim. .........................................35
7.14    Allocation of Distributions Between Principal and Interest. ......................................35
7.15    Setoffs and Recoupments. ...........................................................................................35
7.16    Withholding and Reporting Requirements. ................................................................35
7.17    Securities Registration Exemption. ............................................................................36
7.18    Disbursing Agent. .......................................................................................................37

**ARTICLE VIII. PROCEDURES FOR RESOLVING CLAIMS.** ........................................**37**

8.1    Allowance of Claims. .................................................................................................37
8.2    Objections to Claims. ..................................................................................................38
8.3    Estimation of Claims. ..................................................................................................38
8.4    Claim Resolution Procedures Cumulative. ................................................................38
8.5    Adjustment to Claims Register Without Objection. ...................................................39
8.6    No Distributions Pending Allowance. ........................................................................39
8.7    Distributions After Allowance. ...................................................................................39
8.8    Late Filed Claims. .......................................................................................................39
8.9    Amendments to Claims. ..............................................................................................40

**ARTICLE IX.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** .................................... 40

9.1     Rejection of Executory Contracts and Unexpired Leases. ......................................... 40
9.2     Survival of Indemnification Obligations. ................................................................. 41
9.3     Determination of Cure Disputes and Deemed Consent. .......................................... 41
9.4     Rejection Damages Claims. ...................................................................................... 42
9.5     Insurance Policies. ................................................................................................... 43
9.6     Assignment. .............................................................................................................. 44
9.7     Modifications, Amendments, Supplements, Restatements, or Other Agreements. ... 45
9.8     Reservation of Rights. .............................................................................................. 45

**ARTICLE X.   CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE** ......... 45

10.1    Conditions Precedent to Effective Date. .................................................................. 45
10.2    Waiver of Conditions Precedent. ............................................................................. 46
10.3    Effect of Failure of a Condition. .............................................................................. 46
10.4    Effect of Vacatur of Confirmation Order. ................................................................ 47

**ARTICLE XI.  EFFECT OF CONFIRMATION.** ................................................................. 47

11.1    Binding Effect. ......................................................................................................... 47
11.2    Vesting of Assets. ..................................................................................................... 47
11.3    Pre-Confirmation Injunctions and Stays. ................................................................. 48
11.4    Injunction Against Interference with Plan. ............................................................... 48
11.5    Exculpation. ............................................................................................................. 48
11.6    Injunction Related to Releases and Exculpation. ..................................................... 49
11.7    Subordinated Claims. ............................................................................................... 49
11.8    Retention of Causes of Action and Reservation of Rights. ...................................... 49
11.9    Ipso Facto and Similar Provisions Ineffective. ....................................................... 49
11.10   Solicitation of Plan. ................................................................................................. 50
11.11   Corporate and Limited Liability Company Action. ................................................. 50
11.12   Release of Liens ...................................................................................................... 51

**ARTICLE XII.   RETENTION OF JURISDICTION.** .......................................................... 51

12.1    Retention of Jurisdiction. ......................................................................................... 51
12.2    Courts of Competent Jurisdiction. ........................................................................... 53

**ARTICLE XIII. MISCELLANEOUS PROVISIONS.** .......................................................... 53

13.1    Statutory Fees. ......................................................................................................... 53
13.2    Exemption from Certain Transfer Taxes. ................................................................. 54
13.3    Dissolution of Creditors' Committee. ...................................................................... 54
13.4    Request for Expedited Determination of Taxes of the Debtor. ................................ 54
13.5    Dates of Actions to Implement Plan. ....................................................................... 54
13.6    Amendments. ........................................................................................................... 54
13.7    Revocation or Withdrawal of Plan. .......................................................................... 55
13.8    Notice of Effective Date. ......................................................................................... 55
13.9    Substantial Consummation. ...................................................................................... 56
13.10   Governing Law. ....................................................................................................... 56
13.11   Immediate Binding Effect. ....................................................................................... 56

13.12   Successors and Assigns..................................................................................56
13.13   Entire Agreement..........................................................................................56
13.14   Severability of Plan Provisions.....................................................................56
13.15   Additional Documents...................................................................................57
13.16   Deemed Acts.................................................................................................57
13.17   Computing Time............................................................................................57
13.18   Exhibits to Plan............................................................................................57
13.19   Notices.........................................................................................................57
13.20   Reservation of Rights....................................................................................58

Watchtower Firearms, LLC, debtor and debtor in possession herein ("**Debtor**"), proposes the following chapter 11 plan of liquidation (the "**Plan**"), pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

## ARTICLE I.        DEFINITIONS AND INTERPRETATION.

### 1.1    Definitions.

The following terms shall have the respective meanings specified below:

*Administrative Expense Claim* means any Claim for a cost or expense of administration incurred during the Chapter 11 Case of a kind specified under sections 327, 328, 330, 365, 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the Debtor's businesses and (ii) Professional Fee Claims, but excluding DIP Claims, and Priority Tax Claims.

*Administrative Expense Claims Bar Date* means (i) the first Business Day that is twenty (20) days following the Confirmation Date with respect to Administrative Expense Claims (other than Professional Fee Claims) held by any Person (including any Governmental Unit) arising prior to the Confirmation Date, or (iii) the first Business Day that is twenty (20) days following the Effective Date, with respect to Administrative Expense Claims (other than Professional Fee Claims) held by any Person (including any Governmental Unit) arising between the Confirmation Date and the Effective Date. The Confirmation Order shall provide for the Administrative Expense Claims Bar Dates set forth in clauses (i) and (ii) of the immediately preceding sentence.

*Affiliate* means, with respect to any specified Entity: (i) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified Entity as if such specified Entity were a debtor in a case under the Bankruptcy Code; (ii) any Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified Entity; (iii) any Entity that directly or indirectly owns, controls, or holds twenty percent (20%) or more of the outstanding equity securities of the specified Entity; or (iv) any Entity twenty percent (20%) or more of whose outstanding equity securities are directly or indirectly owned, controlled, or held by the specified Entity or by an Entity that directly or indirectly owns, controls, or holds twenty percent (20%) or more of the outstanding equity securities of the specified Entity. As used in the prior sentence, "control" includes (without limitation) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified Entity (whether through the ownership of equity, by contract or otherwise).

*Allowed* means, with respect to any Claim against or Interest in the Debtor, (i) any Claim or Interest arising on or before the Effective Date or under section 502(h) of the Bankruptcy Code (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan or (b) as to which any objection has been determined by a Final Order of the

Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtor's Schedules as liquidated, non-contingent, and undisputed; *provided* that the Debtor, and the Liquidation Trustee, as applicable, will retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to this Plan, except that no such Claims shall be retained against Released Parties other than as expressly set forth in <u>ARTICLE XII</u> of this Plan.

*Asset* means any right, title, and interest of Debtor in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible.

*Asset Purchase Agreement* means that certain Stalking Horse Asset Purchase Agreement, dated July 30, 2025, by and between Watchtower Firearms, LLC and CK Strategic Partners, LLC, which Agreement is attached to the Notice of Designation of Stalking Horse Bidder appearing at Docket No. 264 in the Bankruptcy Case.

*Available Cash* means Cash on hand (including any amounts invested pending distribution) of the Liquidation Trust, as applicable, as of the date of determination, net of any amounts reserved in respect of Disputed Claims and any reserves established in the good faith discretion of the Liquidation Trustee, to provide for payment of any obligations or liabilities of the Liquidation Trust, including any Claims assumed by the Liquidation Trust pursuant to this Plan and any costs or expenses of the Liquidation Trust or Liquidation Trustee and any taxes (including, to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a disputed ownership fund or other separate taxable entity, any taxes of such fund or separate taxable entity), or to maintain the value of any Assets of the Liquidation Trust or the Liquidation Trust, as applicable.

*Avoidance Actions* means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor or its Estate arising under (i) chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, or (ii) applicable non-bankruptcy law including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers or conveyances.

*Ballot* means each of the ballots distributed to the holders of Impaired Claims entitled to vote on the Plan.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any local rules of the Bankruptcy Court, in each case as applicable to the Chapter 11 Case.

**Bar Date** means the date fixed by which any Persons, asserting a Claim against the Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

**Buffalo** means Buffalo Equipment, Inc. a Texas corporation.

**Buffalo Claims** means the first claims filed by Buffalo as Claim Numbers 36-1 and 37-1 filed in the Bankruptcy Case.

**Business Day** means any calendar day that is not a Saturday, Sunday, or other calendar day on which banks are authorized or required to be closed in New York, New York.

**Buyer** means CK Strategic Partners, LLC, in its capacity as the buyer of all or substantially all of the Debtor's assets, pursuant to the Asset Purchase Agreement.

**Cash** means legal tender of the United States of America.

**Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, recoupment right, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, reimbursement claim, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, accrued or unaccrued, assertable directly or derivatively (including on a theory of veil piercing, alter-ego, vicarious liability, predecessor liability, successor liability, mere continuation, domination and control, mere instrumentality, inadequate capitalization, single business enterprise or common enterprise, equitable subordination or recharacterization), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory (including under any state or federal securities laws), and whether arising under federal law, state statutory law, common law, or any other applicable international or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including but not limited to any and all rights of the Debtor, or Estate Representative to assert rights to extend time under 11 U.S.C. § 108. For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or Interests, (iii) any claim pursuant to section 362 of the Bankruptcy Code, (iv) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any Avoidance Actions.

**Chapter 11 Case** means, with respect to the Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

**Chief Restructuring Officer** means Steven Bellah of KCP Advisory Group LLC, in his capacity as Chief Restructuring Officer of the Debtor.

**Claim** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**Claims Register** means the official register of Claims maintained the Bankruptcy Court.

**Class** means any group of Claims or Interests classified under this Plan pursuant to section 1122(a) of the Bankruptcy Code.

**Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order.

**Confirmation Hearing** means the hearing held by the Bankruptcy Court regarding approval of the Disclosure Statement and/or confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**Creditors' Committee** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as set forth in the *Notice of Appointment of Official Committee of Unsecured Creditors* (Docket No. 64) filed on March 19, 2025.

**Cure Amount** means the payment of Cash or the distribution of other property (as the applicable parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume or assume and assign such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**Cure Dispute** means an unresolved objection regarding assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other issue relating to assumption of an executory contract or unexpired lease.

**D&O Policy** means all directors and officers liability insurance policies (including any runoff policies or tail coverage) issued or providing coverage at any time to the Debtor, for current or formers directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

*Debtor(s)* has the meaning set forth in the introductory paragraph of this Plan.

*Debtor Related Parties* means (i) with respect to the Debtor and its Estate attorneys, accountants, investment bankers, consultants, professional advisors, and independent auditors, and the Chief Restructuring Officer, as applicable, solely in their capacity as such; and (ii) with respect to each Debtor Related Party listed in the immediately preceding clause (i), such Person's or Entity's current and former officers, directors, principals, equity holders (regardless whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, and advisory board members, each in their capacity as such.

*Definitive Documents* means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to, the Plan, including, but not limited to: (i) the Plan; (ii) the Disclosure Statement; (iii) the motion seeking approval of the adequacy of the Disclosure Statement and solicitation of the Plan; (iv) the Disclosure Statement Order; (v) each of the documents comprising any plan supplement; (vi) the Confirmation Order; and (vii) the Liquidation Trust Agreement, each of which shall be in form and substance reasonably acceptable to the Creditors' Committee.

*DIP Claims* means all Claims held by DIP Lender on account of, arising under the DIP Credit Agreement and DIP Orders.

*DIP Credit Agreement* means that certain *Debtor-in-Possession Credit Agreement*, dated as of June 19, 2025, by and among Debtor, as borrower, and CK Strategic Partners, LLC, as lender, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

*DIP Lender* means CK Strategic Partners, LLC in its capacity as the secured lender under the DIP Credit Agreement.

*DIP Order* means, as applicable, (i) the Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing; (B) Use Cash Collateral; (C) Provide Adequate Protection; (D) Grant Liens, Security Interests and Superpriority Claims; and (E) Pay Certain Related Fees and Charges; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [Docket No. 153], and/or (ii) the Final Order Approving the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing The Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 229].

*Disbursing Agent* means the Liquidation Trustee or such Entity or Entities designated by the Liquidation Trustee to make or facilitate distributions required by the Plan.

*Disclosure Statement* means the disclosure statement in respect of this Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time, and which is prepared and distributed in accordance with

sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016 and 3018.

**Disclosure Statement Order** means the order entered by the Bankruptcy Court (a) finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code; and (b) authorizing solicitation of the Plan through the Disclosure Statement.

**Disputed** means, with respect to a Claim, (i) any Claim that is disputed under Article VIII of this Plan or as to which the Debtor or any party in interest have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (ii) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, (iii) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or proof of Claim has been filed, or (iv) any Claim that is otherwise disputed by the Debtor or the Liquidation Trustee or any party in interest in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtor or any party in interest dispute the amount of an asserted Claim, such Claim shall be deemed Allowed only in the amount that is not disputed, if any.

**Disputed Claim Reserve** means any Liquidation Trust Assets allocable to, or held on account of, Disputed Claims, including one or more reserve accounts to be funded with Cash and/or proceeds of the Liquidation Trust Assets, as applicable, in accordance with the terms of the Plan, for Disputed Claims.

**Distribution Record Date** means the Effective Date.

**Effective Date** means the date that is the first Business Day on which all conditions to the effectiveness of this Plan set forth in Section 10.1 of this Plan have been satisfied or waived in accordance with Section 10.2 of this Plan.

**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**Estate** means the estate the Debtor created under section 541 of the Bankruptcy Code.

**Estate Representative** means either (i) the Debtor (prior to the Confirmation Date), or (ii) the Liquidation Trustee (on or after the Liquidation Trust Establishment Date), each as applicable.

**Exculpated Parties** means each of the following in their capacity as such, and in each case, to the maximum extent permitted by law: (i) the Debtor; (ii) the Creditors' Committee and each of its members in his or her official capacity; and (iii) KCP Advisory Group, LLC and Steve Bellah.

**Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new

trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired. However, notwithstanding anything herein to the contrary, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

*General Unsecured Claim* means any unsecured Claim against the Debtor that is not (a) an Administrative Expense Claim; (b) a Priority Tax Claim; or (c) otherwise entitled to priority under the Bankruptcy Code or any Final Order.

*Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

*Impaired* means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*Indemnification Obligations* means the Debtor's indemnification obligations in place immediately prior to the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, or otherwise, for the directors and officers that are currently employed by, or serving on the board of directors of, the Debtor, as of the date immediately prior to the Effective Date, and the attorneys, accountants, investment bankers, and other Professionals that are retained by the Debtor as of the date immediately prior to the Effective Date.

*Insured Claim* means any Claim or portion of a Claim that is, or may be, insured under the Debtor's insurance policies.

*Interest* means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, including all shares, units, common stock, preferred stock, membership interests, partnership interests or other instruments evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and whether fully vested or vesting in the future, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, that existed immediately before the Effective Date.

*Interestholders* mean any Person who held an Interest in the Debtor immediately prior to the Effective Date.

*Interim Compensation Procedures Order* means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket

No. 106], as may be amended, modified, or supplemented from time to time.

*IRS* means the United States Internal Revenue Service.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Liquidation Trust* means that certain trust to be established in accordance with Article VI of this Plan to hold the Liquidation Trust Assets and make distributions to the Liquidation Trust Beneficiaries in accordance with the terms of the Liquidation Trust Agreement.

*Liquidation Trust Agreement* means the agreement evidencing the terms and provisions governing the Liquidation Trust, dated as of the Liquidation Trust Establishment Date, establishing the terms and conditions of the Liquidation Trust, the rights of, and limitations on, the Liquidation Trust Interests, and pursuant to which the Liquidation Trustee shall manage and administer the Liquidation Trust Assets, and will be in form and substance mutually agreeable to the Debtor.

*Liquidation Trust Assets* means, as of the Liquidation Trust Establishment Date, all Assets of the Debtor, including the Liquidation Trust Causes of Action and the Trust Contribution.

*Liquidation Trust Beneficiaries* means (a) the holders of Allowed General Unsecured Claims, (b) the Interestholders holding liquidated Allowed Unsecured Claims and (b) the holders of Interests who vote in favor of the Plan.

*Liquidation Trust Budget* shall mean the budget of allocated money, as approved by the Debtor, Buyer and Creditors' Committee, for the Liquidation Trustee to perform its duties under the Liquidating Trust Agreement, liquidating the Liquidating Trust Assets and providing distributions to Liquidating Trust Beneficiary.

*Liquidation Trust Causes of Action* means all Claims and Causes of Action held by Debtor that are not released or settled under the Plan, or the Confirmation Order.

*Liquidation Trust Establishment Date* means the date the Liquidation Trust is established and the Liquidation Trust Assets are transferred thereto in accordance with Section 6.1 of this Plan.

*Liquidation Trust Expenses* means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any professional or other Person retained by the Liquidation Trustee) on or after the Liquidation Trust Establishment Date in connection with any of their duties under the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

*Liquidation Trustee* shall mean Steven Bellah of KCP Advisory Group LLC , in his capacity as the Liquidating Trustee under the Liquidating Trust.

*Other Secured Claim* means any Secured Claim other than the DIP Claims, Buffalo Claims and TCB Claim.

*Person* means any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

*Petition Date* means February 27, 2025.

*Plan* means this chapter 11 plan, including all exhibits, annexes, supplements, and schedules hereto, as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code and the terms of this Plan.

*Plan Distribution* means the payment or distribution of consideration to holders of Allowed Claims and Interests under this Plan.

*Plan Distribution Date* means a date or dates, including the Initial Plan Distribution Date, as determined by the Estate Representative, in accordance with the terms of the Plan and Confirmation Order, on which the Liquidation Trustee makes a Plan Distribution to holders of the Liquidation Trust Interests on account of Allowed Claims.

*Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Pro Rata Share* means (i) that proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interest in that Class entitled to share in the same recovery as such Class under the Plan, or (ii) that proportion that Allowed Claims in a particular Class bears to the aggregate amount of Allowed Claims in multiple Classes, as applicable.

*Professional* means any Entity retained by order of the Bankruptcy Court in connection with this Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

*Professional Fee Claim* means a Claim for fees and expenses incurred by a Professional on or after the Petition Date through and including the Effective Date under sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code.

*Professional Fee Reserve* means the reserve established and funded by Debtor prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Professionals.

*Professional Fee Reserve Amount* has the meaning in Article II, Section 2.3(f) herein.

*Proof of Claim* means a proof of Claim filed against the Debtor in the Chapter 11 Case.

**Related Parties** means, with respect to any Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' respective current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investments vehicles, and Representatives, and with respect to each of the foregoing, their respective predecessors, successors, and assigns, in each case, solely in their capacity as such.

**Reinstate, Reinstated, or Reinstatement** means with respect to Claims and Interests, the treatment provided for in section 1124(2) of the Bankruptcy Code.

**Representative** means, with respect to any Entity, such Entity's outside attorneys, accountants, investment bankers, consultants, professional advisors, independent auditors, trustees, fund advisors, investment managers, investment advisors, sub-advisors, sub-managers, and other professionals, and each of their respective current and former officers, directors, principals, equity holders (regardless whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, and advisory board members, each in their capacity as such.

**Retained Causes of Action** means the Causes of Action retained by the Debtor and transferred either to the Liquidation Trust on the Liquidation Trust Establishment Date, as listed and described in Exhibit D to the Disclosure Statement.

**Sale** means the sale of substantially all of Debtor's assets to the Buyer, in its capacity as such, pursuant to the terms of the Asset Purchase Agreement and the Sale Order.

**Sale Order** means the Order (A) Approving Asset Purchase Agreement Between the Debtor and the Successful Bidder; (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Designated Contracts; and (D) Granting Related Relief (Docket No. 307) entered by the Bankruptcy Court authorizing the sale of substantially all of Debtor's assets to the Buyer, pursuant to the terms of the Asset Purchase Agreement.

**Schedule of Assumed Contracts** means a schedule to be filed as part of a plan supplement of executory contracts and unexpired leases to be assumed by the Debtor on the Effective Date pursuant to the Plan, which schedule shall be reasonably acceptable to the Creditors' Committee.

**Schedule of Retained Causes of Action** means a schedule to be filed as part of a plan supplement of Causes of Action to be retained by the Debtor and the Liquidation Trust.

**Schedules** means, collectively, any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtor with the Bankruptcy Court and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, supplemented, or otherwise modified from time to time.

**Secured Claim** means a Claim (i) secured by a Lien on the Debtor's interest in property to the extent of the value of such interest as (a) set forth in this Plan, (b) agreed to by the holder of such Claim and the Debtor or the Liquidation Trustee, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

**Security** has the meaning set forth in section 101(49) of the Bankruptcy Code.

**SIR** *means* an insurance arrangement where the policyholder (or insured) agrees to be responsible for claims covered by the respective insurance policy up to a certain dollar amount before the insurer's coverage under that policy begins.

**Statutory Fees** means all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

**Subordinated Securities Claims** means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, including Claim Nos. 24-2, 25-1, 31-1, 32-1, 33-1, 34-1 and 35-1, as may be amended and in their entirety, filed in the Bankruptcy Case.

**TCB Claim** means that secured claim filed by Texas Capital Bank as Claim number 26-1 filed in the Bankruptcy Case.

**Transition Service Agreement** means the Transition Services Agreement Regarding Firearms Operations, dated August 29, 2025, between CK SP Opco, LLC and Watchtower Firearms, LLC, as required by the Asset Purchase Agreement.

**Trust Contribution** means the "Cash Consideration" (as defined in the Asset Purchase Agreement) provided by the Buyer as part of the "Purchase Price" (as defined in the Asset Purchase Agreement) for the Debtor's assets, pursuant to Section 1.1(a) of the Asset Purchase Agreement, to be timely paid by the Buyer on a regular basis, pursuant to the schedule set forth in the Liquidation Trust Budget.

**U.S. Trustee** means the United States Trustee for the Northen District of Texas.

**Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**Wind Down** means the process to (i) sell, abandon, wind down, dissolve, liquidate, or distribute the Liquidation Trust Assets, (ii) resolve, terminate, or wind down any remaining liabilities of the Estate and the Liquidation Trust, (iii) reconcile all Claims, and (iv) administer the Plan and make Plan Distributions, in each case in accordance with the Plan.

**Wind Down Budget** means a budget setting forth the estimate of costs and expenses necessary to effectuate the Wind Down through the Wind Down Completion Date, which budget (i) before the Liquidation Trust Establishment Date, shall be prepared by the Debtor, in consultation with the Creditors' Committee, and/or (ii) after the Liquidation Trust Establishment Date, by the Liquidation Trustee in its reasonable discretion.

*Wind Down Completion Date* means the date upon which the Liquidation Trust Assets have been sold, abandoned, dissolved, liquidated, realized, or otherwise disposed of, and all proceeds thereof have been distributed in accordance with the Plan.

*Wind Down Reserve* means a deposit account or other Cash reserve held by the Estate Representative, in accordance with the Wind Down Budget with a cash reserve, which shall be available and used only to satisfy wind down costs of the Debtor and the Liquidation Trust and shall not be subject to prepetition Liens or Liens or superpriority Claims granted to any Entity under the DIP Orders, the Confirmation Order, or the Plan; *provided* that any funds remaining in the Wind Down Reserve on the Wind Down Completion Date shall be distributed by the Liquidation Trust as Liquidation Trust Net Proceeds pursuant to the Plan and the Liquidation Trust Agreement.

## 1.2    Interpretation; Application of Definitions; Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively. The words "includes" and "including" are not limiting. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (iv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (v) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

## 1.3    Reference to Monetary Figures.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

## 1.4    Controlling Document.

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall

30419580v7 100660.002.00

be construed in a manner consistent with each other so as to effectuate the purposes of each. If there is any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

**ARTICLE II.**      **ADMINISTRATIVE EXPENSE CLAIMS, DIP CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS.**

**2.1**     **Administrative Expense Claims.**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtor or the Liquidation Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such applications must be Filed and served on the requesting party by the Claims Objection Deadline. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

Except as otherwise provided herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of this Court, unless otherwise ordered by the Court.

**2.2**     **Satisfied Secured Claims.**

(a)     The DIP Claims, including principal, interest, fees, costs, other charges, and expenses provided for thereunder, have been paid in full pursuant to a credit bid for all or substantially all of the Debor's assets pursuant to the Asset Purchase Agreement, in accordance

with Section 363(k) of the Bankruptcy Code.

(b)     The Buffalo Claims, including principal, interest, fees, costs, other charges, and expenses provided for thereunder, have been satisfied in full by the Debtor by the assumption of such Claims and liabilities by the Buyer, pursuant to the Asset Purchase Agreement.

(c)     The TCB Claim, including principal, interest, fees, costs, other charges, and expenses provided for thereunder, have been satisfied in full by the Debtor by the assumption of such Claims and liabilities by the Buyer, pursuant to the Asset Purchase Agreement.

### 2.3    **Professional Fee Claims**.

(a)     All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall file, on or before the date that is thirty (30) calendar days after the Confirmation Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Confirmation Date. Objections to any Professional Fee Claims must be filed and served no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Professional Fee Claim).

(b)     Allowed Professional Fee Claims shall be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Professional Fee Claim is entered; (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Estate Representative from Cash on hand, or (iii) if the Debtor is incapable of paying such Claims under the prior clauses (i) and (ii), through the Assets of the Liquidating Trust.

(c)     Notwithstanding the foregoing, any Professional Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court, including the Interim Compensation Procedures Order may be paid at the times and in the amounts authorized pursuant to such orders.

(d)     From and after the Confirmation Date, the Estate Representative and the Liquidation Trustee, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals after the Confirmation Date, in accordance with the Liquidation Trust Budget. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Liquidating Trustee, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

(e)     The Estate Representative is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course

and without the need for Bankruptcy Court approval.

### 2.4    Priority Tax Claims.

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a holder of an Allowed Priority Tax Claim and the Debtor or the Liquidation Trustee, as applicable, agree to less favorable treatment for such holder, in full and final satisfaction of the Allowed Priority Tax Claim, each holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1    Classification in General.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2    Summary of Classification of Claims and Interests.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which Classes are (i) Impaired and Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| 1. | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 2. | General Unsecured Claims | Impaired | Yes |
| 3. | Unsecured Liquidated Claims by Interestholders | Impaired | Yes |
| 4. | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |
| 5. | Interest of Interestholders | Unmpaired | No (Deemed to |

| | | | Reject) |
|---|---|---|---|

### 3.3    Special Provision Governing Unimpaired Claims.

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtor, the Liquidation Trust, and the Liquidation Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4    Elimination of Vacant Classes.

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 3.5    Voting Classes; Presumed Acceptance by Non-Voting Classes.

With respect to each Debtor, if a Class contained Claims or Interests eligible to vote and no holder of such Claims or Interests, as applicable, votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims or Interests, as applicable, in such Class.

### 3.6    Voting; Presumptions; Solicitation.

(a)    **Acceptance by Certain Impaired Classes.**  Only holders of Claims in Classes 2 and 3 are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims or Interests shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims or Interests actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims or Interests actually voting in such Class have voted to accept this Plan.

(b)    **Presumed Acceptance by Unimpaired Classes.**  Holders of Claims in Classes 1 is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)    **Deemed Rejection by Certain Impaired Classes.**  Holders of Claims and Interests in Class 4 and 5 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, such holders are not entitled to vote to accept or reject the Plan.

### 3.7    Cramdown.

If any Class entitled to vote on this Plan does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, is

Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 3.8    No Waiver.

Nothing contained in this Plan shall be construed to waive the Debtor's or other Entity's right to object on any basis to any Claim.

## ARTICLE IV.          TREATMENT OF CLAIMS AND INTERESTS.

### 4.1    Class 1:  Other Secured Claims.

(a)    **Treatment:** Except to the extent that holder of the Other Secured Claims agrees to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Claim, the holder shall receive at the option of the Estate Representative:

> (i)      payment in full in Cash in an amount equal to such Claim no later than forty-five (45) days from the Effective Date;
>
> (ii)     transfer of the collateral securing such Other Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or
>
> (iii)    such other treatment so as to render the Other Secured Claim Unimpaired.

(b)    **Impairment and Voting:** Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holder of and Other Secured Claim is not entitled to vote to accept or reject the Plan, and the votes of such holder will not be solicited with respect to Other Secured Claims.

### 4.2    Class 2: General Unsecured Claims.

(a)    **Treatment:** Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, on or prior to the Effective Date, each such holder shall receive its Pro Rata right to recovery in respect of its Class A-1 Liquidation Trust Interests from the Liquidation Trust, in the priority set forth in the Liquidation Trust Agreement.

(b)    **Impairment and Voting:** Class 2 is Impaired, and, thus, holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.3    Class 3:  Liquidated Unsecured Claims of Interestholders.

(a)    **Treatment:** Except to the extent that a holder of an Allowed unliquidated

Unsecured Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed liquidated or unliquidated Unsecured Claim of an Interestholder, on or prior to the Effective Date, each such holder shall receive its Pro Rata right to recovery in respect of its Class A-2 Liquidation Trust Interests from the Liquidation Trust, in the priority set forth in the Liquidation Trust Agreement.

(b)    **Impairment and Voting:** Classes 3 is Impaired and, thus, holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4    Class 4:  Subordinated Securities Claims.

(a)    **Treatment:** All Subordinated Securities Claims shall be cancelled, pursuant to section 510(b) of the Bankruptcy Code and the holder of such Subordinated Securities shall be entitled to no recovery under the Plan or from the Liquidating Trustee.

(b)    **Impairment and Voting:** Class 4 is Impaired and is entitled to no recovery under the Plan, and thus holders of Class 4 Claims are conclusively deemed to have rejected the Plan, pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 4 Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

### 4.5    Class 5:  Interests of Interestholders.

(a)    **Treatment:** On the Effective Date, all Interests in the Debtor shall be canceled, released and extinguished, and will be of no further force or effect, but in full and final satisfaction, settlement, release, and discharge of such Interests, on or prior to the Effective Date, each such holder (except for Class 3 Claimants) shall be entitled to no recovery under the Plan.

(b)    **Impairment and Voting:** Class 5 is Impaired, and the holders of Interests are conclusively presumed to have rejected the Plan, pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the holders of Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.  Notwithstanding the expected recovery for Interestholders in Class 5, each Interestholder may receive its Pro Rata right to recovery in respect of its Class A-3 Liquidation Trust Interests from the Liquidation Trust, in the priority set forth in the Liquidation Trust Agreement

## ARTICLE V.    MEANS FOR IMPLEMENTATION.

### 5.1    Compromise and Settlement of Claims, Interests, and Controversies.

Pursuant to section 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, and the releases contained in this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a holder of a Claim or Interest may have with respect to any Claim or Interest and any distribution to be made on account of such Claim or Interest. This Plan shall be deemed a motion to approve the compromises and settlements

contained in this Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate, and holders of such Claims and Interests, and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of this Plan.

### 5.2    Sources of Consideration for Plan Distribution; Vesting of Assets.

The Debtor and Liquidation Trustee shall fund Cash distributions under this Plan with Cash proceeds available from:  (i) Cash available on or after the Effective Date in accordance with the Plan; (ii) Trust Contribution; (iii) proceeds realized from the Liquidation Trust Assets; (iii) any additional proceeds of the Wind Down, if any.

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidation Trust Assets shall be vested in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in this Plan.

### 5.3    Implementation of the Plan.

(i)    On and after the Liquidation Trust Establishment Date, the Liquidation Trust shall use commercially reasonable efforts to liquidate and distribute the value of its interests in the Liquidation Trust Assets, including through either prosecuting, settling, or otherwise monetizing the Liquidation Trust Causes of Action, in accordance with the terms of the Liquidation Trust Agreement; provided that notwithstanding anything else contained in this Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall limit the Debtor's ability or authority to settle any Liquidation Trust Cause of Action prior to the Liquidation Trust Establishment Date.

(ii)    Not later than three (3) Business Days following the Confirmation Date, the Liquidation Trust (if not previously established) shall be established pursuant to the Plan and the Liquidation Trust Agreement.

(iii)    On the Liquidation Trust Establishment Date, the Liquidation Trust Assets shall transfer to the Liquidation Trust automatically and without further action of the Bankruptcy Court; provided that the Debtor, the Liquidation Trust, and the Liquidation Trustee shall execute all documentation necessary to effectuate such transfer.

(iv)    After the Liquidation Trust has sufficiently liquidated all of the Liquidating Trust Assets and made plans for distributions to Creditors and, if applicable, Interestholders pursuant to the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall establish the Wind Down Reserve.

### 5.4    Preservation of Causes of Action.

Except as otherwise provided herein or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale, in accordance with section 1123(b) of

the Bankruptcy Code, all Retained Causes of Action are preserved and transferred to the Liquidation Trust on the Effective Date. For the avoidance of doubt, any Claim or Cause of Action that is settled or released prior to the Liquidation Trust Establishment Date shall not be deemed a Liquidation Trust Cause of Action.

No Entity may rely on the absence of a specific reference in the Plan, or any plan supplement, the Disclosure Statement, or the Confirmation Order to any Cause of Action or potential Cause of Action against them as any indication that the Debtor, the Liquidation Trustee, or the Liquidation Trust will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the consummation of the Plan or the occurrence of the Effective Date.

### 5.5    Books and Records.

On the Effective Date, the Liquidation Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate that were not sold and transferred in connection with the Sale and that relate to the operation and business of the Liquidation Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or beneficial.

### 5.6    Effectuating Documents and Further Transactions.

On the Effective Date or as soon reasonably practicable thereafter, the Debtor and the Liquidation Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with this Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Debtor or the Liquidation Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

### 5.7    Sale Order.

Except as expressly provided by this Plan with respect to the Liquidation Trust Budget, nothing in this Plan shall affect, impair or supersede the Sale Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### 5.8    No Revesting of Liquidation Trust Assets.

No Liquidation Trust Asset will revest in the Debtor on or after the date such asset is transferred to the Liquidation Trust but will vest upon such transfer in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with the Plan and the

Liquidation Trust Agreement.

### 5.9    Section 1146 Exemption from Certain Taxes and Fees.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Liquidation Trust Assets to the Liquidation Trust.

### 5.10    Corporate Action.

(a)    Following the Confirmation Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan or the Confirmation Order (including any action to be undertaken by the Liquidation Trust or Liquidation Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Confirmation Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtor, or any other Entity or Person. All matters provided for in this Plan involving the organizational structure of the Debtor, and any other action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor.

(b)    The authorizations and approvals contemplated by this Section 5.10 shall be effective notwithstanding any requirements under non-bankruptcy law.

(c)    The Confirmation Order shall, and shall be deemed, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, to authorize and direct parties, as applicable, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

### 5.11    Governance.

(a)    On the Effective Date, the authority, power and incumbency of the persons then acting as directors, officers, managers, members and other authorized persons of the Debtor shall be terminated and such persons shall be deemed to have resigned.

(b)    The Liquidation Trustee may appoint a manager of Debtor to serve after the Confirmation Date. The Liquidation Trustee, on behalf of the Debtor, may elect such additional manager(s) and/or officer(s) of the Debtor as the Estate Representative deems necessary to implement this Plan and the actions contemplated herein. The Estate Representative, on behalf of the Debtor, shall, after the Confirmation Date, have the power to act by written consent to remove any manager or officer of the Debtor at any time with or without cause.

(c)    As of the Confirmation Date, the governing documents of the Debtor may be amended (and shall be deemed amended) to the extent necessary to carry out the provisions of this Plan.

### 5.12    Cancellation of Existing Securities, Agreements, and Liens.

(a)    Except for the purpose of evidencing a right to a Plan Distribution, on the Effective Date and without the need for any further organizational action or approval of any member, board of directors, board of managers, managers, management, or Security holders of the Debtor, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged.

(b)    On the Liquidation Trust Establishment Date, without the need for any further organizational action or approval of any member, board of directors, board of managers, managers, management, or Security holders of the Debtor, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder of DIP Claims, the Buffalo Claims, or the TCB Claim  in respect thereof, shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged.

(c)    After the Liquidation Trust Establishment Date, the Liquidating Trustee may, in its sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the DIP Claims, Buffalo Claim and TCB Claim, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the DIP Lender and Buffalo, including, without limitation, UCC-3 termination statements.

### 5.13    Disallowance of the Subordinated Securities Claims.    The confirmation of this Plan, pursuant to the Confirmation Order, shall establish that the Subordinated Securities Claims are subordinated to all other Allowed Claims and Interests, pursuant to section 510(b) of the Bankruptcy Code.  Such Subordinated Securities Claims shall be deemed disallowed and shall not be entitled to any recovery under the Plan or Liquidation Trust.

### 5.14    Effectuating Documents; Further Transactions.

On and after the Confirmation Date, the Estate Representative is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

### 5.15    Closing of the Chapter 11 Case.

After the full administration of the Chapter 11 Case, the Liquidating Trustee shall promptly file with the Bankruptcy Court all documents required by the Bankruptcy Court to close the Chapter 11 Case.

## ARTICLE VI.        LIQUIDATION TRUST

### 6.1    Establishment of the Liquidation Trust.

The Confirmation Order shall provide that no later than one (1) Business Day following the Confirmation Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of being vested with and liquidating the Liquidation Trust Assets and making distributions to the Liquidation Trust Beneficiaries in accordance with the terms of the Liquidation Trust Agreement. Following the Liquidation Trust Establishment Date, the Liquidation Trustee shall distribute the Liquidation Trust Interests to the Liquidation Trust Beneficiaries. In each case, subject in all respects to the Liquidation Trust Agreement, the Liquidation Trust and the Liquidation Trustee shall be empowered, without the need for Bankruptcy Court approval, to:

(i)      perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust;

(ii)     establish, maintain, and administer trust accounts;

(iii)    accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle, and protect, as applicable, the Liquidation Trust Assets in accordance with the Liquidation Trust Agreement;

(iv)     make distributions to holders of Liquidation Trust Interests in accordance with the Liquidation Trust Agreement;

(v)      administer the Liquidation Trust's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of the Liquidation Trust before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, audit or examination;

(vi)     retain, compensate and employ professionals to represent the Liquidation Trust;

(vii)    direct and control the pursuit, settlement, liquidation, sale, or abandonment of the Liquidation Trust Assets in accordance with the Liquidation Trust Agreement and applicable law and as necessary to maximize distributions to Liquidation Trust Beneficiaries;

(viii)   exercise such other powers as may be vested in the Liquidation Trust under the Liquidation Trust Agreement, or as are deemed by the Liquidation Trustee to be necessary and proper to implement the provisions of the Liquidation

Trust Agreement and effectuate the purpose of the Liquidation Trust;

(ix)    conduct investigations of the Liquidation Trust Causes of Action pursuant to Bankruptcy Rule 2004;

(x)    pursue, prosecute, settle, abandon, or otherwise resolve the Liquidation Trust Assets (including any Liquidation Trust Causes of Action transferred to the Liquidation Trust and including through the commencement, participation, defense, or continuation of legal proceedings, including judicial, arbitration or administrative proceedings, in any domestic or foreign jurisdiction) in accordance with the Liquidation Trust Agreement during or after the pendency of these Chapter 11 Case;

(xi)    object to, or challenge, any Claim filed against the Debtor's estate;

(xii)    to the extent necessary, fulfill any obligations of the Debtor under the Asset Purchase Agreement or Transition Service Agreement;

(xiii)    protect and enforce the rights of the Liquidation Trust in and to the Liquidation Trust Assets by utilizing any foreign judicial proceedings and any applicable foreign bankruptcy, insolvency, moratorium, or similar law; and

(xiv)    dissolve the Liquidation Trust and Debtor in accordance with the terms of the Liquidation Trust Agreement.

Notwithstanding anything to the contrary in this <u>Section 6.1</u>, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

For the avoidance of doubt, any Claim or Cause of Action that is settled or released prior to the Liquidation Trust Establishment Date, shall not be deemed a Liquidation Trust Cause of Action, and until the Liquidation Trust Establishment Date, the Estate Representative shall retain the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Claim or Cause of Action, subject to the Bankruptcy Code, and applicable orders of the Bankruptcy Court. Nothing in this Plan or in the Confirmation Order shall impair the ability or authority of the Estate Representative to settle any such Claim or Cause of Action.

### 6.2    <u>Funding of and Transfer of Assets into the Liquidation Trust</u>.

(a)    Upon the Liquidation Trust Establishment Date, the Debtor shall transfer the Liquidation Trust Assets to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust (free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) to the fullest extent permitted by law) on such date, to be administered by the

Liquidation Trustee, in accordance with the Liquidation Trust Agreement. The Liquidation Trustee shall have the authority to create additional sub-accounts in trust accounts and sub-trusts within the Liquidation Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the Liquidation Trust. The act of transferring the Liquidation Trust Assets, as authorized by the Confirmation Order, and this Plan shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights (specifically including any extensions available to a trustee or debtor-in-possession under 11 U.S.C. § 108) may be asserted by the Liquidation Trust, in any judicial, arbitration, or administrative proceeding, during or after the pendency of the Chapter 11 Case, as if the asset or right asserted in such judicial, arbitration, or administrative proceeding were an action or other asset still held by the Debtor. Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Estate or its successor shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust. Upon delivery of the Liquidation Trust Assets to the Liquidation Trust, the Debtor and its predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. The Liquidation Trustee shall agree to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Liquidation Trust Agreement.

(b)      All attorney-client privileges, work product protections, joint client privilege, mediation privilege, common interest or joint defense privilege or protection and all other privileges, immunities or protections from disclosure (the "**Privileges**") held by any of (1) the Debtor or (2) any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of the Debtor and its predecessors (together the "**Privilege Transfer Parties**") related in any way to the Liquidation Trust Assets or the analysis or prosecution of any Liquidation Trust Assets (the "**Transferred Privileged Information**") shall be transferred and assigned to, and vested in, the Liquidation Trust and its authorized representatives. The Transferred Privileged Information shall include documents and information of all manner, whether oral, written or digital, and whether or not previously disclosed or discussed. For the avoidance of doubt, the Privileges shall include any right or obligation to preserve or enforce or waive a privilege that arises from any joint defense, common interest or similar agreement involving any of the Privilege Transfer Parties.

(c)      The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information in the Liquidation Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Liquidation Trust and the Liquidation Trust Beneficiaries; provided, however, that to the extent that any such Privileges or Transferred Privileged Information relates to both the Liquidation Trust Assets on one hand and any matter in which the Debtor has an interest on the other, such Privileges and Transferred Privileged Information shall vest jointly in the Debtor and the Liquidation Trust. As relates to any Privileges or Transferred Privileged Information held jointly with the Debtor, (i) with

respect to litigations or proceedings concerning matters in which the Debtor has an interest as a potential defendant, the Debtor shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information upon receiving prior written consent from the Liquidation Trust, and (ii) with respect to litigations or proceedings concerning the Liquidation Trust Assets where the Debtor has an interest as a potential defendant, the Liquidation Trust shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information upon receiving prior written consent from the Estate Representative. The Liquidation Trust and Debtor have agreed that they do not intend to provide a general waiver of all Privileges and that each such party will take commercially reasonable steps to avoid a general waiver of the Privileges.

(d)    Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Liquidation Trust or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Liquidation Trust, on the other hand, or any of their respective employees, professionals or representatives.

(e)    If a Privilege Transfer Party, the Liquidation Trust, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Liquidation Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

### 6.3    Liquidation Trustee.

(a)    **Appointment of Liquidation Trustee.** Upon the Liquidation Trust Establishment Date, the Liquidation Trustee shall be appointed. The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement. The powers, rights and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement and shall include the authority and responsibility to fulfill the items identified in this Section 6.3 of the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

(b)    **Functions of the Liquidation Trustee.** On and after the Liquidation Trust Establishment Date, the Liquidation Trustee shall carry out the functions set forth in this Section 6.3 and may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, other than any restrictions expressly imposed by Liquidation Trust Agreement. Such functions shall include any and all powers and authority to:

(i)      take any actions necessary to (A) resolve all matters related to the Liquidation Trust Assets and (B) vest such assets in the Liquidation Trust;

(ii)      open and maintain bank accounts on behalf of or in the name of the Liquidation Trust;

(iii)      maintain the books and records and accounts of the Liquidation Trust and obtain any necessary insurance;

(iv)      administer the Liquidation Trust's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of the Liquidation Trust before any taxing authority in all matters, including, without limitation, any action, suit, proceeding, audit or examination;

(v)      make distributions of the Liquidation Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay the Liquidation Trust Expenses, to the Liquidation Trust Beneficiaries in accordance with the Liquidation Trust Agreement;

(vi)      invest Cash, as available, and any income earned thereon;

(vii)      retain, compensate and employ professionals to represent the Liquidation Trust or the Liquidation Trustee, as applicable; and

(viii)      take any other actions not inconsistent with the provisions hereof, and the Liquidation Trust Agreement that the Liquidation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

## 6.4    **Liquidation Trust Agreement.**

Prior to the Liquidation Trust Establishment Date, the Debtor shall execute and deliver the Liquidation Trust Agreement. The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

## 6.5    **Fees and Expenses of the Liquidation Trust.**

(a)      From and after the Liquidation Trust Establishment Date, Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in the ordinary course of business, in accordance with the Liquidation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Liquidation Trustee, on behalf of the Liquidation Trust, may employ and pay, in the ordinary course of business, the reasonable fees of any professional (including Professionals previously employed by the Debtor or another party-in-interest) for services rendered or expenses incurred on and after the Liquidation Trust Establishment Date that, in the discretion of the Liquidation Trustee, are necessary to assist the

Liquidation Trustee in the performance of the Liquidation Trustee's duties under the Liquidation Trust Agreement, subject to any limitations and procedures established by the Liquidation Trust Agreement.

(b)    The Liquidation Trustee may retain professionals or consultants (including attorneys, accountants, appraisers, financial advisors, expert witnesses or other parties determined by the Liquidation Trustee to have qualifications necessary or desirable to assist in the investigation, prosecution and/or settlement of the Liquidation Trust Causes of Action).

### 6.6    Dissolution of the Liquidation Trust.

In no event shall the Liquidation Trust be dissolved later than five (5) years from the Liquidation Trust Establishment Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within the six (6) month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidation Trustee that any further extension would not adversely affect the status of the trust as a Liquidation Trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets.

### 6.7    Records.

The Liquidation Trustee shall be provided with originals or copies of or access to all documents, business records, and other information of the Debtor necessary, as reasonably determined by the Liquidation Trustee, for the disposition of Liquidation Trust Assets, subject to the payment of any required fees, costs, or expenses [under the Transition Services Agreement].

### 6.8    Transferability of Liquidation Trust Interests.

The Liquidation Trust Interests shall be transferable solely to the extent provided for, and subject to the conditions set forth, in the Liquidation Trust Agreement.

### 6.9    Liquidation Trust Tax and Other Matters.

(a)    **Tax Treatment.**  For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in their business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i) received a distribution from the Estate of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their

respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust, and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

(b)     For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9. Following the funding of the Liquidating Trust, Debtor shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

(c)     **Liquidation Purpose of the Liquidation Trust; No Successor in Interest.** The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the Assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Liquidation Trustees shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries, as applicable, and not unduly prolong their duration. The Liquidation Trustee shall distribute at least annually to the Liquidation Trust Beneficiaries any Available Cash. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth in the Liquidation Trust Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidation Trustee expressly for such purpose. Notwithstanding anything in the Plan or the Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall always act consistently with, and not contrary to, the purpose of the Liquidation Trust as set forth in the Plan.

(d)     **Cash Investments.** The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power that a Liquidation Trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code. The Liquidation Trustee may expend the Cash of the Liquidation Trust (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Liquidation Trust during liquidation, (ii) to pay the reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidation Trust) and (iii) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement (including, without limitation, the payment of any taxes).

(e)    **Tax Reporting and Tax Payments.**

(i)    The Liquidation Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section. The Liquidation Trustee also shall annually send to each holder of a Liquidation Trust Interest, a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and shall instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(ii)    As soon as practicable after the Liquidation Trust Establishment Date, the Liquidation Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets, as of Liquidation Trust Establishment Date. The Liquidation Trustee shall inform all parties of such valuation as relevant from time to time. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes.

(iii)    Allocations of Liquidation Trust taxable income among Liquidation Trust Beneficiaries (including holders of Liquidation Trust Interests, as grantors and deemed owners of their respective portion of the underlying Liquidation Trust Assets) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all its assets (valued at their tax book value) to the holders of Liquidation Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidation Trust. Similarly, taxable loss of the Liquidation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidation Trust Assets. The tax book value of Liquidation Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidation Trust Assets are transferred to the Liquidation Trust, adjusted in accordance with tax accounting principles prescribed by the United States Revenue Code of 1986, as amended from time to time, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iv)    The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust or the Liquidation Trust Assets.

(v)    The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust, under section 505(b) of the Bankruptcy Code, for all tax returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

(vi)    The Liquidation Trustee, the Liquidation Trustee, and the Debtor shall each cooperate with the other in connection with the preparation and filing of any tax returns, the provision of any required tax forms, and any other matter with respect to taxes, and shall make available to the other, as reasonably requested, any information or records relevant to the

preparation or filing of any tax returns or forms or the defense of any audit or other tax proceeding.

(vii)   The treatment provided in this Section, to the extent permitted by applicable law, shall also apply for state and local tax purposes and all parties shall report consistent therewith.

(viii)   The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable. Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

## ARTICLE VII.     DISTRIBUTIONS.

### 7.1     Distributions Generally.

The Estate Representative shall direct the payments to Other Secured Creditors in accordance with Section 4.1 of this Plan.

After the Effective Date, the Liquidating Trustee shall, from time to time, determine the Plan Distribution Dates. The Liquidating Trustee shall make all Plan Distributions to holders of Allowed Claims in accordance with the terms of this Plan; provided that, for the avoidance of doubt, following the Liquidation Trust Establishment Date, the Liquidation Trustee may make distributions of (i) Liquidation Trust Interests, as applicable, and (ii) any Available Cash. The Liquidating Trust shall make Plan Distributions only in accordance with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement to holders of Allowed Claims, and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or income and/or proceeds realized from Liquidating Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and the Liquidating Trust Agreement.

### 7.2     No Postpetition Interest on Claims.

Unless otherwise provided in this Plan, the Confirmation Order, or other order of

the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### 7.3    Distribution Record Date.

As of the close of business on the Effective Date, the various lists of holders of Claims or Interests in each Class, as maintained by the Debtor or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests after the Effective Date.

Neither the Debtor nor the Liquidating Trustee shall have any obligation to recognize any transfer of a Claim (i) occurring after the close of business on the Effective Date, or (ii) that does not comply with Bankruptcy Rule 3001(e) or otherwise does not comply with the Bankruptcy Code or Bankruptcy Rules.  In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtor nor the Liquidating Trustee shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 7.4    Date of Distributions.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.5    Reserve on Account of Disputed Claims.

(a)    From and after the Liquidation Trust Establishment Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or disallowed by Final Order, the Liquidation Trust shall retain, for the benefit of each holder of a Disputed Claim, an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Estate Representative.  Cash held in the Disputed Claim Reserve (including, with respect to Cash, any earnings that have accrued on such Cash, net of any expenses, including any taxes, relating thereto) shall be retained by the Liquidation Trust for the benefit of holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan. Any Cash shall be either (x) held by the Liquidation Trust in an interest-bearing account or (y) invested in interest- bearing obligations issued by the United States government and guaranteed by the United States government, and having (in either case) a

maturity of not more than thirty (30) days. No payments or Plan Distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

(b)    Subject to the other provisions of this Plan regarding timing of Plan Distributions, after a Disputed Claim becomes an Allowed Claim, the Liquidation Trustee shall distribute to the holder thereof the Plan Distributions, if any, to which such holder is then entitled under the Plan and any earnings related to the portion of the Disputed Claim Reserve allocable to such Allowed Claim (net of any expenses, including any taxes, relating thereto), and a Liquidation Trust Interest in accordance with the Plan, subject to the provisions concerning distributions from the Liquidation Trust, including the application of any reserves.  The balance of any Cash previously retained but not distributed to a Disputed Claim holder shall be included in future distributions to holders of Claims in the applicable Class.  Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will be paid (i) first from the Disputed Claim Reserve and (ii) if the amount available for Plan Distribution pursuant to the foregoing clause (i) is insufficient to remit Plan Distributions required to be made to such holder pursuant to this sentence, such holder shall receive the amount of such insufficiency on the next subsequent Distribution Date(s) from Liquidation Trust Assets.

(c)    If a Disputed Claim is disallowed, assets treated as held in the Disputed Claim Reserve on account of such Claim shall, at such time as reasonably determined by the Liquidation Trustee, be treated for U.S. federal income tax purposes as an additional distribution of an undivided interest in the underlying assets with respect to previously Allowed Claims.  For the avoidance of doubt, the Liquidation Trustee shall not be required to make any Plan Distributions as a result of any Disputed Claims that are disallowed until all Disputed Claims either become Allowed Claims or are disallowed.

(d)    Unless otherwise ordered by the Bankruptcy Court, the Disputed Claim Reserve shall not be used for operating expenses, costs, or any purpose other than as set forth in this Section 7.5.

### 7.6    Distributions After Effective Date.

Plan Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 7.7    Plan Distributions Made by Liquidation Trustee.

All Plan Distributions shall be made by the Liquidation Trustee on and after the Effective Date as provided herein; *provided* that, for the avoidance of doubt, following the Liquidation Trust Establishment Date, the Liquidation Trustee may make distributions of (i) Liquidation Trust Interests, as applicable, and (ii) any Available Cash.  The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of its duties.  The Debtor shall use commercially reasonable efforts to provide the Liquidation Trustee

with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtor's books and records. The Debtor shall cooperate in good faith with the Liquidation Trustee to comply with the withholding and reporting requirements outlined in Section 7.16 of this Plan.

### 7.8    Delivery of Distributions.

Subject to Bankruptcy Rule 9010, the Liquidation Trustee shall make all Plan Distributions to any holder of an Allowed Claim or its authorized designee or transferee as and when required by this Plan at (a) the address of such holder on the books and records of the Debtor or its agents, (b) at the address in any written notice of address change delivered to the Debtor or the Liquidation Trustee, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001, or (c) the address of the designee of such holder to the extent practicable. Subject to Section 7.9 of this Plan, in the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Liquidation Trustee has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable, such distribution shall be made to such holder without interest.

### 7.9    Unclaimed Property.

(a)    Six (6) months from the later of:  (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date a Claim or Interest is first Allowed, all Plan Distributions payable on account of such Claim or Interest that are unclaimed pursuant to Section 7.9(b) shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Liquidation Trustee or its successor or assigns, and all claims of any other Entity (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. The Liquidation Trustee shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's books and records and the Bankruptcy Court's filings.

(b)    A Plan Distribution shall be deemed unclaimed if a holder has not (i) accepted a particular distribution or, in the case of distribution made by check, by ninety (90) calendar days after issuance, negotiated such check, (ii) given notice to the Liquidation Trustee of an intent to accept a particular Plan Distribution, (iii) responded to the Debtor or Liquidation Trustee's request for information necessary to facilitate a particular Plan Distribution, or (iv) taken any other action necessary to facilitate such distribution.

### 7.10    Satisfaction of Claims.

Unless otherwise provided in this Plan, any Plan Distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims and shall not exceed the amount of such Allowed Claims.

7.11 **Manner of Payment Under Plan.**

Except as specifically provided herein, at the option of the Estate Representative, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Estate Representative. Any wire transfer fees incurred by the Estate Representative in connection with the transmission of a wire transfer shall be deducted from the amount of the recipient holder's Plan Distribution.

7.12 **Minimum Distribution.**

The Liquidation Trustee shall have no obligation to make a Plan Distribution that is less than $100.00 in Cash.

7.13 **No Distribution in Excess of Amount of Allowed Claim.**

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

7.14 **Allocation of Distributions Between Principal and Interest.**

Except as otherwise provided in this Plan or as otherwise required by law (as determined by the Debtor or Liquidation Trustee), Plan Distributions with respect to an Allowed Claim shall be allocated first to the principal amount of such Allowed Claim (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of such Allowed Claim, to any portion of such Allowed Claim for accrued but unpaid interest.

7.15 **Setoffs and Recoupments.**

Except as otherwise provided in this Plan, including in all respects Sections 11.6(a), 11.6(b), 11.7, and 11.8, the Debtor or the Liquidation Trustee on behalf the Debtor, may, pursuant to applicable non-bankruptcy law, set off or recoup against any Allowed Claim and the Plan Distributions to be made pursuant to this Plan on account of such Allowed Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that such Debtor or its successors may hold against the holder of such Allowed Claim after the Liquidation Trust Establishment Date. Notwithstanding the foregoing, neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee, the Debtor, or the Estate or its successor of any claims, rights, or Causes of Action that the Liquidation Trustee, the Debtor, or an Estate or its successor or assign may possess against the holder of such Claim, except as otherwise provided in this Plan, including in all respects Sections 11.6(a), 11.6(b), and 11.7.

7.16 **Withholding and Reporting Requirements.**

(a) **Withholding Rights.** In connection with this Plan, any Entity issuing any

instrument or making any distribution or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a Plan Distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any Entity issuing any instrument or making any Plan Distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b)     **Forms.**  Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon reasonable request, deliver to the applicable withholding agent or such other Entity or Estate designated by the Liquidation Trustee, an appropriate IRS Form W-9 or (if the payee is a foreign person) IRS Form W-8 and/or any other forms or documents, as applicable, requested by the Liquidation Trustee or the applicable withholding agent to reduce or eliminate any required federal, state, or local withholding.  If such request is made by a withholding agent or such other Entity or Estate designated by the Liquidation Trustee and the party entitled to receive such property as an issuance or distribution fails to comply with any such request within ninety (90) days after the request is made, the amount of such issuance or distribution shall irrevocably revert to the Liquidation Trust, as applicable, and any Claim in respect of such distribution under this Plan shall be discharged and forever barred from assertion against the Debtor, Estate, the Liquidation Trust, and their respective property.

### 7.17     Securities Registration Exemption.

Any Liquidation Trust Interests will not, and are not intended to, constitute "securities" and, accordingly, will not be registered pursuant to the Securities Act or any applicable state or local securities law.  However, if it should be determined that any such Liquidation Trust Interests constitute "securities," the offer and sale of (i) such Liquidation Trust Interests to the Liquidation Trust Beneficiaries will be exempt to the extent provided in section 1145 of the Bankruptcy Code from registration, without further action by any person, under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations requiring registration for the offer or (ii) such Liquidation Trust Interests to the Liquidation Trust Beneficiaries will be exempt to the extent provided in Section 4(a)(2) of the Securities Act and similar exemptions under state securities laws.  Any such Liquidation Trust Interests shall be subject to the limitations set forth in the Liquidation Trust Agreement in a manner consistent with this Plan.

### 7.18    Disbursing Agent.

(a)    The Liquidation Trustee, in his, her or its discretion, shall have the authority to enter into agreements with one or more disbursing agents to facilitate the distributions required under the Plan, the Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trustee may pay to the disbursing agent all reasonable and documented fees and expenses of the disbursing agent without the need for other approvals, authorizations, actions or consents. For the avoidance of doubt, the reasonable and documented fees of the disbursing agent will be paid by the Liquidation Trustee and will not be deducted from distributions to be made under the Plan to holders of Allowed Claims receiving distributions from the disbursing agent. The disbursing agent shall not be required to give any bond or surety or other security for the performance of its duties.

(b)    From and after the Confirmation Date, the disbursing agent, solely in its capacity as disbursing agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against the Debtor, the Liquidation Trust Beneficiaries, and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such disbursing agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such disbursing agent. No holder of a Claim, a Liquidation Trust Beneficiary, or other party in interest shall have or pursue any claim or Cause of Action against the disbursing agent, solely in its capacity as disbursing agent, for making Plan Distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such disbursing agent.

(c)    The disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all plan distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the disbursing agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the disbursing agent to be necessary and proper to implement the provisions hereof.

(d)    Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the disbursing agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Liquidation Trust in the ordinary course of business.

## ARTICLE VIII.    PROCEDURES FOR RESOLVING CLAIMS.

### 8.1    Allowance of Claims.

The Estate Representative shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter

11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order in the Chapter 11 Case allowing such Claim.

### 8.2    Objections to Claims.

Any objections to Claims shall be served and filed (i) on or before one hundred and eighty (180) days following the later of (a) the Effective Date and (b) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (ii) such later date as ordered by the Bankruptcy Court; *provided* that the Estate Representative may extend the Claim Objection Deadline for an additional one hundred and eighty (180) days in their sole discretion upon the filing of a notice with the Bankruptcy Court, with further extensions thereafter permitted after notice and a hearing.

### 8.3    Estimation of Claims.

The Estate Representative may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor had previously objected to or otherwise disputed such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Estate Representative may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) calendar days after the date on which such Claim is estimated.

### 8.4    Claim Resolution Procedures Cumulative.

All of the objection, estimation, and resolution procedures in this Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with this Plan without further notice or Bankruptcy Court approval. Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Liquidation Trust Establishment Date, the Liquidation Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether

in law or in equity, whether known or unknown, that the Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.

### 8.5    Adjustment to Claims Register Without Objection.

Any Claim or Interest that (a) is a duplicate, (b) has been paid or satisfied, or (c) has been amended or superseded, may be adjusted or expunged on the Claims Register by the Estate Representative upon agreement between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.6    No Distributions Pending Allowance.

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.  Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or Plan Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.7    Distributions After Allowance.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Plan Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  On a date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Liquidation Trustee in the Liquidation Trustee's sole discretion, the Liquidation Trustee shall provide to the holder of such Claim the Plan Distribution (if any) to which such holder is entitled under this Plan, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.  For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, the Liquidation Trustee shall not be required to make any Plan Distributions on account of Disputed Claims that become Allowed Claims or as a result of any Disputed Claims that are disallowed until all Disputed Claims either become Allowed Claims or are disallowed.  Notwithstanding anything contained herein, to the extent that a Disputed Claim becomes an Allowed Claim after the Liquidation Trust Establishment Date or Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Liquidation Trust Establishment Date or Effective Date (as applicable).

### 8.8    Late Filed Claims.

Except as otherwise provided herein or as agreed to by the Debtor or Liquidation Trustee, (i) any Proof of Claim filed after the Bar Date with respect to such Claim and (ii) any proof of Administrative Expense Claim filed after the applicable Administrative Expense Claims Bar Date with respect to such Administrative Expense Claim, shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims and such Administrative Expense Claims may not receive any Plan

Distributions on account of such Claims and such Administrative Expense Claims, unless such late Proof of Claim or such proof of Administrative Expense Claim, as applicable, has been deemed timely filed by a Final Order.

### 8.9   Amendments to Claims.

A Claim may not be filed, amended, or supplemented without the prior written authorization of the Bankruptcy Court or the Liquidation Trustee, and any such new, amended, or supplemented Claim filed without such written authorization shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.  This Section 8.9 is subject to the bar date for rejection damages claims provided in Section 9.4 of the Plan.

## ARTICLE IX.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 9.1   Rejection of Executory Contracts and Unexpired Leases.

(a)      As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor are a party shall be deemed rejected except for an executory contract or unexpired lease that: (i) is specifically and expressly designated as a contract or lease to be assumed pursuant to this Plan, including as set forth in the Schedule of Assumed Contracts or Confirmation Order; (ii) was previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court or assumed and assigned pursuant to pursuant to a Final Order of the Bankruptcy Court; (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is the subject of a separate assumption or rejection motion filed by the Estate Representative on or before the Effective Date; (v) is the subject of a pending Cure Dispute; (vi) is a contract, lease, or other agreement or document entered into in connection with the Plan; or (vii) is a D&O Policy or other insurance policy to which the Debtor or Estate Representative is a beneficiary or an insured.  For the avoidance of doubt, the Estate Representative may seek to assume, assume and assign, or reject an executory contract or unexpired lease at any time prior to the Effective Date, whether or not such executory contract or unexpired leases is listed on the Schedule of Assumed Contracts.

(b)      Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Debtor, the Liquidation Trustee, or the assignee of such executory contract or unexpired lease (as applicable) have provided adequate assurance of future performance under such executory contract or unexpired lease. Each executory contract or unexpired lease assumed pursuant to this Plan shall vest in and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of this Plan, any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law, and shall be assigned by the Debtor to the Liquidation Trust pursuant to this Plan on the Effective Date. Notwithstanding anything to the contrary herein, all rights and obligations of the Debtor under or with respect to any executory contracts and unexpired leases to which the Debtor is a party shall vest in the Liquidation Trust on the Liquidation Trust Establishment Date, whether or not such

executory contracts or unexpired leases are otherwise pending assumption, assumption and assignment, or rejection in accordance with Section 9.1(a) of this Plan, and the Liquidation Trust shall have all rights of the Debtor to assume, assume and assign, or reject such executory contracts and unexpired leases on or prior to the Effective Date.

(c)      Assumption of any executory contract or unexpired lease pursuant to this Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the Effective Date.

### 9.2    Survival of Indemnification Obligations.

Any and all obligations of the Debtor to indemnify, defend, reimburse, or limit the liability of current and former officers, directors, members, managers, agents, or employees against any Claims or Causes of Action as provided in the Debtor's corporate charters, bylaws, other organizational documents, other agreements, or applicable law shall survive confirmation of the Plan, and shall be assumed by the Debtor solely to the extent necessary to recover and have access to insurance proceeds. Any indemnification claims arising under the foregoing documents shall be treated as General Unsecured Claims against the Debtor to the extent Allowed. Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by the Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise, solely for the purposes described in the first sentence of this Section 9.2.

### 9.3    Determination of Cure Disputes and Deemed Consent.

Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Estate Representative may otherwise agree.

The Debtor shall file, as part of a plan supplement, the Schedule of Assumed Contracts. At least fourteen (14) days before the Confirmation Hearing, the Debtor shall serve a notice on parties to executory contracts or unexpired leases to potentially be assumed or assumed and assigned to the Liquidation Trust, reflecting the Debtor's intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtor within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to

assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of the Debtor under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of the Debtor, or its Estate, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 9.3, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

If there is a Cure Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Estate Representative may settle any Cure Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Cure Dispute; *provided* that the Debtor or the Liquidation Trustee reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the Debtor and the Liquidation Trustee). The Debtor or the Liquidation Trustee may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

### 9.4    Rejection Damages Claims.

Unless an earlier date is otherwise provided for by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's executory contracts or unexpired leases pursuant to this Plan, must be filed with Bankruptcy Court and served on the Chief Restructuring Officer and Debtor's counsel no later than twenty-one (21) days after the Effective Date.

Any Claims arising from the rejection of an executory contract or unexpired lease

for which proofs of Claim were not timely filed as set forth in the paragraph above shall not (i) be treated as a creditor with respect to such Claim, or (ii) participate in any Plan Distribution on account of such Claim, and any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or the property for any of the foregoing without the need for any objection by the Liquidation Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such contract or lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's prepetition executory contracts or unexpired leases shall be classified as General Unsecured Claims, except as otherwise provided by Final Order of the Bankruptcy Court.

**9.5    <u>Insurance Policies</u>.**

The Debtor's insurance policies and any agreements, documents, or instruments related thereto, as of the Effective Date (or on such earlier date as determined by the Estate Representative, in consultation with the Creditors' Committee), shall be deemed to be and treated as executory contracts and shall be assumed by the Debtor and shall continue in full force and effect thereafter in accordance with their respective terms and vest in the Liquidation Trust. All officers, managers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Policies in effect as of, or purchased on or before, the Effective Date for the full term of such D&O Policies regardless of whether such officers, managers, directors, agents, and/or employees remain in such positions as of the Effective Date, in each case, to the extent set forth in such D&O Policies.  Nothing in the Plan shall alter, supplement, change, decrease, or modify the terms (including the conditions, limitations, and/or exclusions) of the Debtor's insurance policies, except as provided below; *provided* that, notwithstanding anything in the foregoing to the contrary, the enforceability and applicability of the terms (including the conditions, limitations, and/or exclusions) of the insurance policies, and thus the rights or obligations thereof, are subject to the Bankruptcy Code. For the avoidance of doubt, the transfer of the rights of the Debtor and the Estate to recover proceeds from D&O Policies to the Liquidation Trust and the Liquidation Trust, as applicable, shall not hinder the ability of any beneficiaries or insureds of such D&O Policies to submit claims and otherwise pursue and obtain coverage under the D&O Policies.

Notwithstanding anything to the contrary in the Plan, if a Claim is subject to coverage under one of the Debtor's insurance policies, in full or in part, no distributions under the Plan need be made on account of such Claim until a determination is made by a court of competent jurisdiction as to such coverage and, if coverage is available, until payment is first made from proceeds of such applicable insurance policy.  To the extent of any amounts not covered by the proceeds of such insurance policy, if any, such Claim shall be treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.  No Plan Distributions need be made on account of an Allowed Claim that may be payable pursuant to one or more of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such applicable insurance policy.  To the extent that one

or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any order or approval of the Bankruptcy Court; provided that a notice of claim satisfaction shall be filed and served on the Holder of the applicable Claim.  Notwithstanding the provisions of this Section 9.5 of the Plan, the Liquidating Trust may, in its sole discretion, in order to facilitate distributions and the completion of its responsibilities under this Plan: (i) make a distribution under the Plan with respect to an Allowed Claim that may be covered by one or more of the Debtor's insurance policies; or (ii) seek to estimate a Claim, solely for distribution purposes, that may be covered by one of the Debtor's insurance policies.

> If an applicable insurance policy of the Debtor has an SIR, the holder of an Allowed Claim that is covered by such SIR insurance policy shall only be entitled to an Allowed General Unsecured Claim against the applicable Debtor's Estate up to a maximum amount of the applicable SIR.   Any such Allowed General Unsecured Claim may be further reduced, or disallowed in full, upon the liquidation of such Claim in an appropriate forum.  By and through the Liquidating Trustee, the Liquidating Trust may seek entry of an order of the Bankruptcy Court fixing any such Claim in the maximum amount of the SIR to facilitate Distributions.  For the avoidance of doubt, nothing in this Plan obligates the Debtor, the post-Confirmation Debtor, the Liquidating Trust or the Liquidating Trustee (as applicable) to otherwise satisfy any SIR under any Debtor insurance policy containing a SIR.  Any recovery on account of an Allowed Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtor's insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof under the SIR insurance policy and applicable law.

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall (i) be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist under any of the Debtor's insurance policies being transferred to the Liquidating Trust, (ii) relieve any Entity from the requirement to timely file a Proof of Claim by the Claims Bar Date or Supplemental Claims Bar Date, as applicable; (iii) require any payment on account of a SIR for a Claim that is covered by an insurance policy before such holder of an Allowed Claim pursues recovery in excess of an applicable SIR from any applicable insurance policy of the Debtor; or (iv) limit the amount that a holder of a Claim that is covered by an insurance policy can pursue against any applicable insurance policy above any applicable SIR.  Each insurer's applicable rights and defenses to claims asserted under an insurance policy containing an SIR or applicable law, including, without limitation, coverage defenses, are expressly reserved and not affected by this Plan or the Confirmation Order.

### 9.6    Assignment.

> To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned to the Liquidation Trust hereunder, if applicable, shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided

under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

**9.7** **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

**9.8** **Reservation of Rights.**

(a)     Neither the exclusion nor the inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in any plan supplement, nor anything contained in this Plan, shall constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee or their respective Affiliates has any liability thereunder.

(b)     Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee under any executory or non- executory contract or unexpired or expired lease.

(c)     Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trust, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(d)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Estate Representative shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE X.**     **CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.**

**10.1** **Conditions Precedent to Effective Date.**

The Effective Date shall not occur unless all of the following conditions precedent

have been satisfied:

(a)     the Disclosure Statement Order shall have been entered;

(b)     the Liquidation Trust Establishment Date has occurred, including the transfer of the Liquidation Trust Assets to the Liquidation Trust;

(c)     the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction, which Confirmation Order shall be in form and substance reasonably acceptable to the Creditors' Committee;

(d)     all actions, documents, certificates, and agreements necessary or appropriate to implement the Plan shall have been effected or executed or deemed executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws; and

(e)     all authorizations, consents, regulatory approvals, rulings or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received.

### 10.2    Waiver of Conditions Precedent.

(a)     Each of the conditions precedent to the occurrence of the Effective Date of the Plan set forth in this ARTICLE X may be waived, in whole or in part, by the Debtor, with the consent of the Creditors' Committee, not to be unreasonably withheld, without leave of or order of the Bankruptcy Court.

(b)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.

(c)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 10.3    Effect of Failure of a Condition.

If the Effective Date does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtor, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtor or any other Entity; *provided* that, notwithstanding the foregoing, all actions authorized to be taken pursuant to the Confirmation Order, and Section 6.2 hereof, and all terms of the Confirmation Order, and Section 6.2 shall remain in full force and effect and the Liquidation Trust Assets shall remain property of the Liquidation Trust and the Liquidation Trust

Assets shall remain property of the Liquidation Trust, and in each case, not revert to the Debtor or the Estate.

### 10.4    Effect of Vacatur of Confirmation Order.

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtor's obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor or otherwise; *provided* that, notwithstanding the foregoing, all actions authorized to be taken pursuant to the Confirmation Order, and Section 6.2 hereof, and all terms of the Confirmation Order, and Section 6.2 shall remain in full force and effect and the Liquidation Trust Assets shall remain property of the Liquidation Trust and the Liquidation Trust Assets shall remain property of the Liquidation Trust, and in each case, not revert to the Debtor or the Estate.

## ARTICLE XI.        EFFECT OF CONFIRMATION.

### 11.1    Binding Effect.

As of the Confirmation Date, this Plan shall bind (i) the Debtor; (ii) the Liquidation Trustee and the Liquidation Trust; (iii) all holders of Claims against and Interests in the Debtor and its respective successors and assigns, regardless of whether any such holders were (a) Impaired or Unimpaired under this Plan, (b) presumed to accept or deemed to reject this Plan, (c) failed to vote to accept or reject this Plan, (d) voted to reject this Plan, and/or (e) received any Plan Distribution under the Plan; (iv) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan; (v) each Entity acquiring property under this Plan and the Confirmation Order; and (vi) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

### 11.2    Vesting of Assets.

Except as otherwise provided in this Plan, or the Confirmation Order, on and after the Liquidation Trust Establishment Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Assets of the Estate, including all claims, rights, and Causes of Action and any property acquired by the Debtor under or in connection with this Plan, shall vest in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges, constructive trusts, and other interests to the extent permitted under applicable law. Subject to the terms of this Plan and the Liquidation Trust Agreement, on and after the Liquidation Trust Establishment Date, the Liquidation Trustee may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) and Interests without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Liquidation Trustee may pay the

charges that it incurs on behalf of the Estate after the Confirmation Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. In addition, all rights, benefits, and protections provided to the Debtor or its Estate pursuant to the Plan, any plan supplement, or the Confirmation Order including, but not limited to, the release, exculpation, and injunction provisions provided in Section ARTICLE XI of the Plan, shall vest in the Liquidation Trust and the Liquidation Trust, as applicable, unless expressly provided otherwise by the Plan or the Confirmation Order.

### 11.3    Pre-Confirmation Injunctions and Stays.

Unless otherwise provided in this Plan or a Final Order of the Bankruptcy Court, all injunctions and stays arising under or entered during the Chapter 11 Case, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 11.4    Injunction Against Interference with Plan.

Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan or the occurrence of the Effective Date.

### 11.5    Exculpations.

To the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action based on, relating to, or in any manner arising from, in whole or in part, from the Petition Date through the Effective Date: the Debtor (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or its Estate; the Liquidation Trust; the Liquidation Trustee; the Chapter 11 Case (including the filing and administration thereof); the Wind Down; the Disclosure Statement; the DIP Orders; the Sale Order; the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan or any of the other Definitive Documents; any other debt or Security of the Debtor and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtor; the business or contractual or other arrangements or other interactions between the Debtor and any Exculpated Party; the restructuring of any Claim or Interest during the Chapter 11 Case or on the Effective Date; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan and the transactions contemplated by the Confirmation Order; the funding of this Plan; the administration and implementation of this Plan or Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the exculpations in this Section 11.5 shall not release or exculpate (a) any Entity from Claims or

Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state or foreign laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Definitive Document, or any document, instrument, or agreement executed to implement the Plan.

### 11.6    Injunction Related to Exculpations.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

### 11.7    Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments thereof under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and Liquidating Trustee reserve the right, to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.8    Retention of Causes of Action and Reservation of Rights.

Except as otherwise provided in this Plan, including in all respects Section 11.6, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. Except as otherwise provided in this Plan, including in all respects Section 11.6, the Debtor, the Liquidation Trust, and the Liquidation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

### 11.9    Ipso Facto and Similar Provisions Ineffective.

Any term of any prepetition policy, prepetition contract, or other prepetition

obligation applicable to the Debtor shall be void and of no further force or effect with respect to the Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on (i) the insolvency or financial condition of the Debtor, (ii) the commencement of the Chapter 11 Case, or (iii) the confirmation or consummation of this Plan, including any change of control that occurred as a result of the Sale.

### 11.10   Solicitation of Plan.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtor and each of its respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### 11.11   Corporate and Limited Liability Company Action.

Upon the Liquidation Trust Establishment Date or the Effective Date, as applicable, all actions contemplated by the Plan (including any action to be undertaken by the Liquidation Trust) shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Liquidation Trust Establishment Date or the Effective Date, as applicable, ratified without any requirement for further action by holders of Claims or Interests, the Debtor, or any other Entity or person. All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, members, managers, or officers of the Debtor, the Liquidation Trust, or the Liquidation Trustee. On or before the Effective Date, the authorized officers of the Debtor, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan). The authorizations and approvals contemplated by this Section 11.13 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 11.12   Release of Liens.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such

mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Liquidation Trust.

## ARTICLE XII.        RETENTION OF JURISDICTION.

### 12.1    Retention of Jurisdiction.

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to sections 1334 and 157 of title 28 of the United States Code, over all matters arising in, arising under, or related to the Chapter 11 Case for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(c)    to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)    to ensure that Plan Distributions to holders of Allowed Claims and Interests are accomplished as provided in this Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under this Plan;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any administrative or priority Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of claims or interests;

(f)    to hear and determine settlements and disputes with respect to any Liquidation Trust Asset, including any Cause of Actions transferred to the Liquidation Trust;

(g)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including any such motions, adversary proceeding, application, contested matter or other litigated matter brought by the Liquidation Trustee or the Liquidation Trustee;

**(i)**    to enter, implement, or enforce such orders as may be appropriate in

the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(j)       to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(k)       to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code or approve any modification of the Confirmation Order or any contract, instrument, release, or other agreements or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order (in each case, to the extent Bankruptcy Court approval is necessary), or to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, the Confirmation Order, or any order of the Bankruptcy Court, in such a manner as may be necessary to carry out the purposes and effects thereof;

(l)       to hear and determine all Professional Fee Claims;

(m)       to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(n)       to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or related to any of the foregoing;

(o)       to hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan;

(p)       to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan and the Confirmation Order;

(q)       to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)       to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(s)       to hear and determine any other matters related to the Chapter 11 Case and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(t)       to resolve any disputes concerning whether an Entity had sufficient

notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any Bar Date or Administrative Expense Claims Bar Date established in the Chapter 11 Case, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is discharged hereunder or for any other purposes;

(u) to hear, adjudicate, decide, or resolve any and all matters related to ARTICLE XI of this Plan, including the releases, discharge, exculpations, and injunctions issued thereunder;

(v) to enforce all orders previously entered by the Bankruptcy Court;

(w) to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(x) to recover all Assets of the Liquidation Trust, Debtor and property of the Estate, wherever located;

(y) to hear and determine all disputes between the Debtor on one hand, and the Liquidation Trustee, on the other; and

(z) to enter a final decree closing the Chapter 11 Case.

**12.2 <u>Courts of Competent Jurisdiction</u>.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XIII     MISCELLANEOUS PROVISIONS.**

**13.1 <u>Statutory Fees</u>.**

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtor or the Liquidation Trustee in full on the Effective Date. As of the Liquidation Trust Establishment Date, the Liquidation Trustee shall assume primary responsibility for the payment of all Statutory Fees. On and after the Liquidation Trust Establishment Date, the Liquidation Trustee shall pay any and all Statutory Fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Debtor or Liquidation Trustee, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay Statutory Fees to the U.S. Trustee until the earliest of the Debtor's, or Liquidation Trustee's (on behalf of the Debtor), as applicable, case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a

Proof of Claim or any other request for payment of Statutory Fees.

### 13.2    Exemption from Certain Transfer Taxes.

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or Liquidating Trust; or (b) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Confirmation Order), shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, document recording tax, intangibles or similar tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 13.3    Dissolution of Creditors' Committee.

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case. The Debtor or the Liquidation Trust, as applicable, shall not be responsible for paying the fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.  For the avoidance of doubt, the Creditors' Committee has authority to prosecute and object to (and receive approved compensation for such actions) related to any Professional Fee Application following the Effective Date

### 13.4    Request for Expedited Determination of Taxes of the Debtor.

The Debtor and Liquidation Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns of the Debtor filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Wind Down Completion Date.

### 13.5    Dates of Actions to Implement Plan.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 13.6    Amendments.

(a)  **Plan Modifications.** This Plan may be amended, supplemented, or otherwise modified by the Debtor (with the consent of the Creditors' Committee, not to be unreasonably withheld, conditioned, or delayed) in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court; *provided* that any amendment, supplement, or modification that adversely affects the Liquidation Trust shall also require the consent of the Liquidation Trustee if the Liquidation Trustee has been appointed (such consent, not to be unreasonably withheld, conditioned, or delayed).

(b)  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtor may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of this Plan and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, supplemented, or otherwise modified.

(c)  **Certain Technical Amendments.** Prior to the Effective Date, the Debtor (with the consent of the Creditors' Committee, not to be unreasonably withheld, conditioned, or delayed) may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, as long as such technical adjustments and modifications do not adversely affect in a material way the treatment of the holders of Claims or Interests under this Plan; *provided* that any adjustment or modification that adversely affects the Liquidation Trust shall also require the consent of the Liquidation Trustee if the Liquidation Trustee has been appointed (such consent, not to be unreasonably withheld, conditioned, or delayed).

### 13.7    Revocation or Withdrawal of Plan.

The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date.  If this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur on the Effective Date, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the holders of Claims, or (iii) constitute an admission, acknowledgement, offering, or undertaking of any sort by the Debtor or any other Entity; *provided* that notwithstanding the foregoing all actions authorized to be taken pursuant to the Confirmation Order shall remain in full force and effect and the Liquidation Trust Assets shall remain property of the Liquidation Trust and shall not revert to the Debtor or the Estate.

### 13.8    Notice of Effective Date.

As soon as practicable, but not later than three (3) Business Days following the

Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 13.9    Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.10    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that this Plan or the Confirmation Order provides otherwise, the rights, duties, and obligations arising under this Plan and the Confirmation Order shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Texas, without giving effect to the principles of conflicts of laws thereof.

### 13.11    Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Confirmation Date, the terms of this Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Liquidation Trustee, the holders of Claims or Interests (regardless of whether the holders of such Claims or Interests are deemed to have accepted or rejected this Plan), the Released Parties, and each of their respective successors and assigns.

### 13.12    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

### 13.13    Entire Agreement.

On the Effective Date, this Plan, any plan supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

### 13.14    Severability of Plan Provisions.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or

interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Liquidation Trust (as the case may be), and (c) non-severable and mutually dependent.

### 13.15    Additional Documents.

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the Liquidation Trustee, and all holders of Claims receiving Plan Distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.16    Deemed Acts.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### 13.17    Computing Time.

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth in this Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.18    Exhibits to Plan.

All exhibits, schedules, supplements, and appendices to this Plan are incorporated into and are a part of this Plan as if set forth in full in this Plan.

### 13.19    Notices.

All notices, requests, and demands hereunder shall be in writing (including by facsimile or email transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or email transmission, upon confirmation of transmission, addressed as follows:

| |
|---|
| If to Debtor, to<br>Attn: Steven Bellah, Chief Restructuring Officer<br>C/O KCP Advisory Group, LLC<br>700 Technology Place, Suite 212 |

Billerca, MA 01821
Email: sbellah@kcpadvisory.com
          jdinoff@kcpadvisory.com

with a copy  to:

**CONDON TOBIN**
8080 Park Lane, Suite 700
Dallas, TX 75231
ATTN: H. Joseph Acosta
         Jeff Carruth
         Aimee E. Marcotte
Emails: jacosta@condontobin.com
          jcarruth@condontobin.com
          amarcotte@condontobin.com

If to the Creditors' Committee

**HUSCH BLACKWELL LLP**
1900 N. Pearl Street
Suite 1800
Dallas, TX 75201
ATTN: Buffey E. Klein
          Caleb Holzaepfel
 Emails:  buffey.klein@huschblackwell.com
          caleb.holzaepfel@ huschblackwell.com

After the occurrence of the Effective Date, the Debtor and the Liquidation Trustee have authority to send a notice to Entities that entitled to receive documents pursuant to Bankruptcy Rule 2002.

### 13.20   Reservation of Rights.

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision of this Plan, or the taking of any action by the Debtor with respect to this Plan, the Disclosure Statement, the Confirmation Order, or any plan supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

**WATCHTOWER FIREARMS, LLC**,

By:_____ */s/ Steven Bellah*_____
         Steven Bellah,
         Chief Restructuring Officer of
         Watchtower Firearms, LLC

**OF COUNSEL:**

H. Joseph Acosta (TX SBN 24006731)
jacosta@condontobin.com
Jeff Carruth (TX SBN 24001846)
jcarruth@condontobin.com
Aimee E. Marcotte (TX SBN 24097101)
amarcotte@condontobin.com
**Condon Tobin**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Tel: 214-265-3852
Fax: 214-265-6311


**Attorneys for Debtor and**
**Debtor in Possession**