

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 29, 2026**

_____
**United States Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WATCHTOWER FIREARMS, LLC, | § | CASE NO. 25-40684-MXM-11 |
| | § | |
| DEBTOR | § | CHAPTER 11 |

## ORDER DENYING MOTION TO CONVERT
*[Relates to ECF No. 398]*

Before the Court is the *Motion to Convert Case to Chapter 7 Pursuant to Section 1112(B) by the Podgurny Parties* (the "**Motion to Convert**")[1] filed by Mr. Dion Podgurny, F-1 Firearms, LLC, and PFT Texas, LLC (together, the "**Podgurny Parties**") requesting the Court to convert the above-captioned chapter 11 bankruptcy case to a case under chapter 7 of the Code pursuant to § 1112(b). In addition to the Motion to Convert, the Court reviewed and considered the testimony of Mr. Steve Bellah, Mr. Dion Podgurny, Mr. Kyle Haman, and Mr. Jason Colosky and the exhibits

---

[1] Bkr. 25-40684 ECF No. 398.

admitted into evidence.[2] The Court took judicial notice of all the pleadings filed and hearings held in the above-captioned bankruptcy case and in Adversary Proceeding No. 25-04038, styled *Watchtower Firearms, LLC v. Dion Podgurny and F-1 Firearms, LLC* (the "**Adversary Proceeding**") pending in this Court. Finally, the Court considered the arguments of Counsel.

For the reasons detailed below, the Court **DENIES** the Motion to Convert filed and prosecuted by the Podgurny Parties and **SUSTAINS** the objections to the Motion to Convert prosecuted by Watchtower Firearms, LLC (the "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). CK Strategic Partners, LLC ("**CK Partners**") participated in the hearing and indicated its support for Debtor to pursue confirmation of a plan[3] but did not take an official position on the Motion to Convert.

## I. JURISDICTION

The Court has subject matter jurisdiction over the Motion to Convert pursuant to 28 U.S.C. §§ 1334 and 157 and the standing order of reference in this District. This contested matter constitutes a core proceeding over which the Court has both statutory and constitutional authority to enter a final order pursuant to 28 U.S.C. § 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, which is incorporated by Fed. R. Bankr. P. 7052 and 9014.[4]

---

[2] *See* Bkr. 25-40684 ECF No. 433 for a complete list of exhibits admitted into evidence; *see also* Bkr. 25-40684 ECF No. 442 for the hearing transcript.

[3] *See* Bkr. 25-40684 ECF No. 442 at pg. 35, lines 17-18.

[4] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

2

## II. FINDINGS OF FACT

To put the Motion to Convert into context and summarize the "unusual circumstances" in this case, a brief history of the litigious disputes between Debtor and the Podgurny Parties is necessary to fully appreciate the Court's ruling.

### A. Pre-petition History and Business of Debtor and the Podgurny Parties

Debtor was formed to acquire the assets and firearm-manufacturing business from F-1 Firearms, LLC, which is owned by Mr. Podgurny. At or about that same time, in April 2023, Debtor signed a *Commercial Lease* with PFT Texas, LLC (the "**Landlord**"), which is also owned by Mr. Podgurny. Under the Commercial Lease, Debtor leased the Lease Premises from which F-1 Firearms, LLC, and then Debtor, conducted the firearm-manufacturing business.

Within a year after Debtor acquired the business from F-1 Firearms, LLC and executed the Commercial Lease with Landlord, the parties began filing lawsuits against one another for various alleged claims and causes of action, including defamation, business disparagement, breach of contract, tortious interference, and a multitude of issues concerning the Commercial Lease and the Lease Premises, *to wit*:

- Watchtower filed the First Lawsuit[5] against Mr. Podgurny and Landlord. On March 14, 2025, Landlord removed the First Lawsuit to the United States Bankruptcy Court for the Southern District of Texas—Houston Division, Adv. Proc. No. 25-03074, where the First Lawsuit remains pending.

- Landlord filed the Second Lawsuit[6] against Watchtower. The Court has no update on the status of the Second Lawsuit.

---

[5] *Watchtower Firearms, LLC, v PFT Texas, LLC and Dion Podgurny,* Cause No. 2024-47878 filed in the 80th Judicial District Court, Harris County, Texas (the "**First Lawsuit**").

[6] *PFT Texas LLC (Landlord) v Watchtower Firearms LLC (Tenant),* Cause No. 244100444357 filed in Precinct No. 4 Place 1 of the Justice Court of Harris County, Texas (the "**Second Lawsuit**").

- Landlord filed the Third Lawsuit[7] against Watchtower. The Court has no update on the status of the Third Lawsuit.

- Landlord filed the Fourth Lawsuit[8] against Mr. Jason Colosky (the CEO of Watchtower) and other affiliated defendants. On July 3, 2025, the Fourth Lawsuit was removed to the United States District Court for the Southern District of Texas—Houston Division, Civil Action No. 4:25-cv-03108. On December 9, 2025, the District Court remanded the case back to the state court. The Court has no update on the status of the Fourth Lawsuit.

- Mr. Podgurny filed criminal assault charges against certain employees of Watchtower with the Harris County Constable's Office Pct. 4, Case No. 2407-02864. The criminal assault case was subsequently closed.

The First Lawsuit, Second Lawsuit, and Third Lawsuit were each stayed by the § 362 Automatic Stay when Debtor filed the above-captioned Bankruptcy Case. To date, the automatic stay has not been lifted to permit either of those litigation matters to proceed. The Fourth Lawsuit was filed after Debtor filed its bankruptcy case, but Debtor is not a named party.

**B.    Procedural History of Debtor's Bankruptcy Case and Adversary Proceeding**

*1.    The Bankruptcy Case*

On February 27, 2025, Debtor filed its *Voluntary Petition*[9] initiating the above-captioned bankruptcy case.

On June 11, 2025, Debtor filed a Sale Motion[10] seeking Court approval of a sale process to sell Debtor's business and substantially all its non-litigation assets.

---

[7] *PFT Texas, LLC v. Watchtower Firearms, LLC,* Cause No. 1242941 filed in County Court at Law No. Three, Harris County, Texas (the "***Third Lawsuit***").

[8] *F-1 Firearms, LLC, Dion Podgurny, et al v. Jason Colosky, et al,* Cause No. 25-05-08364 filed in the 457th Judicial District Court of Montgomery County, Texas (the "***Fourth Lawsuit***").

[9] ECF No. 1.

[10] *Debtor's Motion for Entry of (I) an Order (A) Approving Bidding Procedures and Certain Bid Protections, (B) Scheduling a Bid Deadline, Auction, and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Cure Procedures and the Form and Manner of Notice thereof, (D) Approving the Debtor's Form of APA, and € Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims and Interests, and (B) Authorizing the Assumption of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief,* Bkr. 25-40684 ECF No. 208 (the "***Sale Motion***").

4

On June 24, 2025, the Podgurny Parties filed an Objection to Debtor's Sale Motion.[11]

On August 22, 2025, the Sale Motion came on for hearing. On August 27, 2025, the Sale Order was entered,[12] authorizing Debtor to sell substantially (but not all) of its assets and business to CK Partners. The sale closed on August 29, 2025.[13]

On October 27, 2025, Debtor filed its Plan of Liquidation.[14]

On or about November 12, 2025, Debtor vacated and returned the Lease Premises to Landlord.

On November 19, 2025, Debtor filed a Notice[15] which effectively provided for the deemed rejection of the Commercial Lease under Section 365 of the Bankruptcy Code.

On November 19, 2025, Landlord filed a Motion to Lift Stay[16] seeking to lift the § 362 Automatic Stay, if applicable, to file a lawsuit against Mr. Colosky and other current or former employees of Debtor and CK Partners and its subsidiary. The Podgurny Parties contend the named parties damaged the Lease Premises prior to Debtor vacating and returning the Lease Premises to Landlord.

---

[11] *F-1's Amended Motion for Joinder to Shareholder and Creditor group's Objection to Debtor's Emergengy (sic) Motion to Approve Bid Procedures and Sell Substantially all Assets,* Bkr. 25-40684 ECF No. 237 (the "**Objection to Debtor's Sale Motion**").

[12] *Order (A) Approving Asset Purchase Agreement Between the Debtor and the Successful Bidder; (B) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (C) Authorizing the Assumption and Assignment of Designated Contracts; and (D) Granting Related Relief*, Bkr. 25-40684 ECF No. 307 (the "**Sale Order**").

[13] *See Notice of Closing of Sale to CK Strategic Partners, LLC*, Bkr. 25-40684 ECF No. 308.

[14] See *Original Chapter 11 Plan of Liquidation of Watchtower Firearms, LLC*, Bkr. 25-40684 ECF No. 359 (the "**Plan of Liquidation**").

[15] *Notice of Withdrawal of Motion of Debtor to Assume Nonresidential Real Property Lease with PFT Texas LLC*, Bkr. 25-40684 ECF No. 375 (the "**Notice**").

[16] *Defendant PFT Texas, LLC's Motion to Lift Stay*, Bkr. 25-40684 ECF No. 372 (the "**Motion to Lift Stay**").

On November 19, 2025, the Podgurny Parties filed a Motion to Compel[17] because Debtor failed to file its August, September, and October 2025 monthly operating reports.

On December 2, 2025, Debtor filed its Disclosure Statement[18] and Motion for Conditional Approval.[19] The Motion for Conditional Approval was set for hearing on December 9, 2025.

On December 8, 2025, Debtor filed the delinquent Monthly Operating Reports[20] that were the subject of the Motion to Compel, which rendered the scheduled hearing on the Motion to Compel moot.

On December 9, 2025, Debtor's Motion for Conditional Approval came on for hearing.[21] Due to several significant deficiencies and flaws with the Plan of Liquidation and Disclosure Statement, Debtor requested to adjourn the hearing to enable Debtor to file an amended plan and disclosure statement. During the hearing, the Court, *sua sponte,* raised the issue of whether the case should be converted to Chapter 7. In response, Debtor requested that the Motion for Conditional Approval be continued to enable Debtor to file an amended plan and amended disclosure statement to address the substantial deficiencies raised during the hearing. The Court granted Debtor's request to continue the hearing to a date to be determined.

On December 15, 2025, the Podgurny Parties filed the Motion to Convert, which was set for hearing on January 14, 2026, in compliance with § 1112(b)(3).

---

[17] *Motion to Compel Monthly Operating Reports for August, September, and October 2025*, Bkr. 25-40684 ECF No. 376 (the "**Motion to Compel**").

[18] *See Disclosure Statement for Original Chapter 11 Plan of Liquidation of Watchtower Firearms, LLC*, Bkr. 25-40684 ECF No. 385 (the "**Disclosure Statement**").

[19] *See Debtor's Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement and Approving (A) Solicitation Procedures, (B) Forms of Ballots and Notices in Connection Therewith, and (D) Combined Hearing Timelines, and (III) Granting Related Relief,* Bkr. 25-40684 ECF No. 386 (the "**Motion for Conditional Approval**").

[20] *See* Bkr. 25-40684 ECF Nos. 389, 390, and 391.

[21] *See* Bkr. 25-40684 ECF No. 397.

On January 6, 2026, Debtor filed the Amended Plan[22] and Amended Disclosure Statement[23] and reset the Motion for Conditional Approval for hearing on January 14, 2026.

On January 14, 2026, Debtor's Motion for Conditional Approval and the Podgurny Parties' Motion to Convert came on for hearing.

Following the close of evidence and arguments of counsel and subject to Debtor making additional modifications to the Amended Disclosure Statement, the Court conditionally granted the Motion for Conditional Approval. Debtor subsequently filed the Revised Amended Disclosure Statement,[24] and the Court entered the Order Conditionally Approving Disclosure Statement,[25] which, in part, scheduled the Amended Plan for a confirmation hearing on February 24, 2026.

Following the close of evidence and arguments of counsel on the Motion to Compel, the Court suggested that it continue the hearing on the Motion to Convert to coincide with the confirmation hearing on Debtor's Amended Plan. Absent consent from the Podgurny Parties or compelling circumstances, however, the Court is required to decide the Motion to Convert within 15 days of the commencement of the hearing—*to wit*—January 29, 2026. The Podgurny Parties did not consent to extend the time within which the Court is required to decide the motion. Consequently, to comply with § 1112(b)(3), the Court took the Motion to Convert under advisement with the intent to issue a ruling on or before January 29, 2026.

---

[22] *First Amended Chapter 11 Plan of Liquidation of Watchtower Firearms, LLC,* Bkr. 25-40684 ECF No. 404 (the "**Amended Plan**").

[23] *First Amended Disclosure Statement for First Amended Chapter 11 Plan of Liquidation of Watchtower Firearms, LLC,* Bkr. 25-40684 ECF No. 405 (the "**Amended Disclosure Statement**").

[24] *Revised First Amended Disclosure Statement for First Amended Chapter 11 Plan of Liquidation of Watchtower Firearms, LLC,* Bkr. 25-40684 ECF No. 436 (the "**Revised Amended Disclosure Statement**").

[25] *Order (I) Conditionally Approving the (A) Adequacy of the Disclosure Statement, (B) Solicitation Procedures, (C) Forms of Ballots and Notices in Connection therewith, and (D) Combine Hearing Timelines, and (II) Granting Related Relief,* Bkr. 25-40684 ECF No. 437 (the "**Order Conditionally Approving Disclosure Statement**").

*2. The Adversary Proceeding*

On March 12, 2025, Debtor filed a Complaint[26] initiating the Adversary Proceeding against Mr. Podgurny and F-1 Firearms, LLC. The Complaint includes the following counts:

- Count One: Defamation—Against Mr. Podgurny;
- Count Two: Business Disparagement—Against Mr. Podgurny;
- Count Three: Breach of Contract—Against F-1 Firearms, LLC;
- Count Four: Tortious Interference with Business Relationships—Against Mr. Podgurny; and
- Count Five: Preliminary Injunction Pursuant to Section 105 of the Bankruptcy Code.

On March 13, 2025, Debtor filed a motion for an expedited hearing on its application for injunctive relief (sought in Count Five of the Complaint). The parties agreed to the entry of an *Agreed Order*[27] to address the injunction relief sought by Debtor during the pendency of its Bankruptcy Case. The Agreed Order provides, in part:

> Each Party as of the date of this Order, shall not make or authorize the publication of any public statement (including on social media, in press releases, interviews, through intermediaries, or in group communications to employees, vendors, shareholders, contractors, or other third parties) that directly or indirectly disparages, defames, accuses, or otherwise casts the other Party in a negative light.[28]

On October 29, 2025, Mr. Podgurny and F-1 Firearms, LLC filed a *Defendants' Motion to Withdraw the Reference.*[29]

---

[26] *Plaintiff's Original Complaint and Application for Injunctive* Relief, Adv. ECF No. 1 which was amended by *Plaintiff's Amended Complaint and Application for Injunctive* Relief, Adv. 25-4038 ECF No. 27 (the "**Complaint**") initiating Adversary Proceeding No. 25-04038 pending in this Court (the "***Adversary Proceeding***").
[27] Adv. 25-4038 ECF No. 53.
[28] *Id.* at pg. 2.
[29] Adv. 25-4038 ECF No. 86.

On November 21, 2025, Debtor filed a *Motion to Dismiss Without Prejudice*[30] seeking to dismiss the Complaint and Adversary Proceeding, without prejudice, contending that a subsequent liquidating trustee should have the opportunity to review, analyze, and, if appropriate, pursue the estate's claims and causes of action that are the subject of the Complaint. Defendants Mr. Podgurny and F-1 Firearms, LLC opposed dismissing the Complaint without prejudice to refiling.[31]

On December 8, 2025, following the status conference required by L.B.R. 5011-1, the Court issued its *Report and Recommendation to the United States District Court on the Motion to Withdraw the Reference.*[32] The Adversary Proceeding remains pending and abated pending a decision from the United States District Court on the pending motion to withdraw the reference.

**C.    The Motion to Convert**

In its Motion to Convert, the Podgurny Parties contend:

- "Debtor has sold its assets and ceased operations while sustaining huge losses and depleting its cash position."[33]

- "In sum, the administration of the estate has yielded a huge postpetition operating loss of $4.6 million, while depleting the Debtor's available cash after the sale of the assets, and an estate which may be administratively insolvent."[34]

- "There is no prospect of any rehabilitation of the Debtor's business."[35]

Therefore, the Podgurny Parties contend that Debtor's case should be converted to a case under Chapter 7 under § 1112(a)(1) and (b)(4)(A).

### III.    ANALYSIS AND CONCLUSIONS OF LAW

Section 1112(b) provides, in pertinent part,

---

[30] Adv. 25-4038 ECF No. 99.
[31] *See Opposition to Motion to Dismiss Without Prejudice*, Adv. 25-4038 ECF No. 104.
[32] Adv. 25-4038 ECF No. 111.
[33] Bkr. 25-40684 ECF No. 398 at ¶ 1.
[34] *Id.* at ¶ 12.
[35] *Id.* at ¶ 15.

9

> (b)(1) Except as provided in paragraph (2) . . . on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 . . . for cause . . .
>
> (b)(2) The court *may not* convert a case under this chapter to a case under chapter 7 . . . if the court finds and specifically identifies *unusual circumstances* establishing that converting or dismissing the case is *not in the best interest of creditors* and the estate and the debtor or any other party in interest establishes that –
>
> > (A) there is a *reasonable likelihood that a plan will be confirmed* . . . within a reasonable period of time; and . . .
> >
> > (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4(A)—
> >
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > >
> > > (ii) that will be cured within a reasonable period of time fixed by the court.
>
> . . .
>
> (b)(4) for purposes of this subsection, the term "cause" includes—
>
> > (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of *rehabilitation*; . . . [36]

### A.  11 U.S.C. § 1112(b)(4)(A)

The Podgurny Parties argue that they have established "cause" under § 1112(b)(4)(A), therefore, the Court must convert Debtor's case to Chapter 7. In support of their contentions, the Podgurny Parties offered into evidence Debtor's Monthly Operating Reports[37] but focused solely on Part 4, line k titled "*Profit (loss)*" in each Monthly Operating Report:

---

[36] 11 U.S.C. § 1112 (emphasis added).
[37] Podgurny Parties Exs. 7, 10-13, 15-18 (collectively, the "**Monthly Operating Reports**").

| Exhibit No. | Month | Profit <Loss> (Part 4, Line k) |
|---|---|---|
| 7 | March 2025 | <$304,768.00> |
| 10 | April 2025 | <$417,798.00> |
| 11 | May 2025 | <$833,533.00> |
| 12 | June 2025 | <$1,196,802.00> |
| 13 | July 2025 | <$1,048,328.00> |
| 15 | August 2025 | <$800,792.00> |
| 16 | September 2025 | <$266,561.00> |
| 17 | October 2025 | <$15,294.00> |
| 18 | November 2025 | $0.00 |
| | TOTAL | <$4,883,876.00>[38] |

However, cherry-picking one line item from the Monthly Operating Reports provides a distorted view of Debtor's actual operations during its bankruptcy case. While Monthly Operating Reports primarily focus on cash flow, Part 4 of the Monthly Operating Report attempts to provide an accrual snapshot of a debtor's operations. For example, included within the "*Profit <loss>*" figure in Part 4, line k are non-operating depreciation and interest charges reflected on lines g and h respectively. Both figures can distort a debtor's actual operations over a few month period. The depreciation and interest figures alone account for at least $1,319,682[39] of the alleged $4.8 million loss.

When considering all the information included in the Monthly Operating Reports, Debtor's postpetition operations were not nearly as bleak or devastating as the Podgurny Parties contend. For example, Debtor maintained positive cash flow each month throughout the case as summarized below:

---

[38] Monthly Operating Reports, Part 4, line k.
[39] *See Id.* at Part 4, lines g and h.

| Exhibit No. | Month | Cash Balance at End of Mo. (Part 1, Line d) (Beginning case balance on the Petition Date: $66,588.00) |
|---|---|---|
| 7 | March 2025 | $724,168.00 |
| 10 | April 2025 | $269,482.00 |
| 11 | May 2025 | $593,456.00 |
| 12 | June 2025 | $491,578.00 |
| 13 | July 2025 | $1,123,342.00 |
| 15 | August 2025 | $695,634.00 |
| 16 | September 2025 | $429,073.00 |
| 17 | October 2025 | $413,779.00 |
| 18 | November 2025 | $413,779.00[40] |

Debtor's total *current assets* (consisting of accounts receivable and inventory) remained constant throughout the case until Debtor closed the sale of substantially all its operating assets to CK Partners:

| Exhibit No. | Month | Total Current Assets at the end of the Month (Part 2, Line d) |
|---|---|---|
| 7 | March 2025 | $5,566,134.00 |
| 10 | April 2025 | $5,567,176.00 |
| 11 | May 2025 | $6,068,202.00 |
| 12 | June 2025 | $6,143,682.00 |
| 13 | July 2025 | $5,999,143.00 |
| 15 | August 2025 | $667,623.00 |
| 16 | September 2025 | $429,073.00 |
| 17 | October 2025 | $413,779.00 |
| 18 | November 2025 | $413,779.00[41] |

Debtor paid its postpetition administrative expense payables throughout the time Debtor was operating its business as debtor-in-possession:

---

[40] *Id.* at Part 1, line d.

[41] *Id.* at Part 2, line d.

| Exhibit No. | Month | Outstanding Postpetition Payables at the end of the Month (Part 2, Line f) | Outstanding Postpetition Payables Past Due at end of the Month (Part 2, Line g) | Total Postpetition Payables |
|---|---|---|---|---|
| 7 | March 2025 | $263,077.00 | $170,572.00 | $433,649.00 |
| 10 | April 2025 | $354,007.00 | $336,865.00 | $690,872.00 |
| 11 | May 2025 | $581,946.00 | $538,544.00 | $1,120,490.00 |
| 12 | June 2025 | $591,655.00 | $534,293.00 | $1,125,948.00 |
| 13 | July 2025 | $513,553.00 | $483,655.00 | $997,208.00 |
| 15 | August 2025 | $0.00 | $0.00 | $0.00 |
| 16 | September 2025 | $0.00 | $0.00 | $0.00 |
| 17 | October 2025 | $0.00 | $0.00 | $0.00 |
| 18 | November 2025 | $0.00 | $0.00 | $0.00[42] |

Although Mr. Bellah testified that the figures reflected in the Monthly Operating Reports are correct, he disputed the Podgurny Parties' interpretation and contention that the Monthly Operating Reports establish that Debtor experienced substantial losses or diminution while Debtor was operating as debtor-in-possession.[43]

Based on the Court's detailed review and analysis of the Monthly Operating Reports and other exhibits admitted into evidence and considering the credible testimony of Mr. Bellah, the Court finds and concludes that the Podgurny Parties failed to establish, by a preponderance of the evidence, that Debtor and its estate has suffered "substantial or continuing loss to or diminution of the estate" sufficient to establish "cause" under § 1112(b)(4)(A).

Because the Podgurny Parties failed to establish that Debtor has suffered "substantial or continuing loss to or diminution of the estate," the Court need not analyze or determine if Debtor has "a reasonable likelihood of rehabilitation" under § 1112(b)(4)(A).

---

[42] *Id.* at Part 2, lines f and g.
[43] Bellah Testimony, ECF 25-40864 No. 442 pg. 93, lines 3-15.

13

**B.**     **11 U.S.C. § 1112(b)(4)(M)**

Although not specifically pleaded, the Podgurny Parties seemed to argue that Debtor will not be able to effectuate substantial consummation of its Amended Plan due to their alleged substantial administrative expense claim against Debtor and its estate.[44] In support of this contention, the Podgurny Parties called Mr. Podgurny and Mr. Haman to testify to alleged damage to the Lease Premises caused by Debtor, its officers, employees, postpetition through the date when Debtor vacated the Lease Premises. The Podgurny Parties contend that the alleged damage constitutes a substantial administrative expense claim that prevents Debtor's Amended Plan from being confirmable. Debtor, through the testimony of Mr. Bellah and Mr. Colosky, vehemently disputes all the Podgurny Parties' allegations.

The Court finds that the testimony of Messrs. Podgurny, Haman, and Colosky reinforced and served as a continuation of the litigious disputes between Debtor and the Podgurny Parties evidenced by the First Lawsuit, Second Lawsuit, Third Lawsuit, Fourth Lawsuit, the Adversary Proceeding, the alleged claims asserted by the Podgurny Parties in the Motion to Lift Stay, and the many contested hearings throughout this bankruptcy case as reflected on the Docket Sheet. To be clear, the Court makes no findings concerning the merits, or lack thereof, of the underlying Hatfield-and-McCoy feud between Debtor and the Podgurny Parties, as the resolution of those disputes is for another day. For purposes of the Motion to Convert, the Court finds that the testimony was unpersuasive and did not satisfy the necessary burden of proof to support the conversion of Debtor's case to Chapter 7.

Consequently, based on the record, the Court finds and concludes that the Podgurny Parties failed to establish "cause" as defined in § 1112(b)(4)(M).

---

[44] 11 U.S.C. § 1112(b)(4)(M).

C.     **The 11 U.S.C. § 1112(b)(2)(A) exception to § 1112(b)(1)**

Because the Podgurny Parties failed to establish "cause" under § 1112(b)(4), the Court need not convert Debtor's case under § 1112(b)(1). But even if the Podgurny Parties had established "cause" (other than under § 1112(b)(4(A)), Debtor has satisfied, if necessary, by a preponderance of evidence, the § 1112(b)(2) exception to § 1112(b)(1).

The record establishes and the Court so finds that "*unusual circumstances*" exist to support a finding that it is "*not in the best interest of creditors*" to convert Debtor's case at this time. The Court further finds that Debtor established that "there is a *reasonable likelihood that a plan will be confirmed* . . . within a reasonable period of time." Consequently, "[t]he court *may not* convert" Debtor's case to under chapter 7 at this time.[45]

The Court finds that "unusual circumstances" exist due to the undeniable hostile and litigious disputes between Debtor and the Podgurny Parties. Debtor contends that its primary remaining "assets" are its claims against the Podgurny Parties, and its Amended Plan will have the funding necessary to prosecute the estate's claims against the Podgurny Parties for the benefit of Debtor's unsecured creditors. More importantly, the Creditors' Committee agrees. The Creditors' Committee made clear on the record that (i) it supports providing Debtor the opportunity to obtain confirmation of its Amended Plan; and (ii) it opposes the Podgurny Parties' Motion to Dismiss.[46] Also, no other creditor or party-in-interest support the Podgurny Parties' Motion to Convert.

The Court further finds and concludes that, at this time, it is "*not in the best interest of creditors*" for the Court to significantly tilt the scales of the pending litigation between the parties,

---

[45] 11 U.S.C. § 1112(b)(2)
[46] Bkr. 25-40684 ECF No. 442 at pg. 44, lines 14-15; pg. 66 line 2 through pg. 67 line 3; pg. 223 line 23 through pg. 225 line 19.

as a conversion at this time would favor the Podgurny Parties—the target of Debtor's claims and causes of action.

The Court also finds and concludes that the record established, through the testimony of Mr. Bellah and Mr. Colosky, that Debtor has a *reasonable likelihood that a plan will be confirmed*.

Therefore, the Court finds and concludes that, if necessary, § 1112(b)(2) has been satisfied, consequently, the Motion to Dismiss must be denied, without prejudice to the Podgurny Parties or any other creditor or party-in-interest seeking to convert or dismiss Debtor's case upon good cause shown.

### IV.    CONCLUSION

For all the foregoing reasons, it is, hereby,

**ORDERED** the Motion to Convert is **DENIED**, without prejudice.


### ###   *END OF ORDER*   ###